ASSOCIATED INDUSTRIES OF NEW YORK STATE, INC., Petitioner,

v.

The UNITED STATES DEPARTMENT OF LABOR et al., Respondents.

No. 221, Docket 73–1978.

United States Court of Appeals,
Second Circuit.

Argued Sept. 14, 1973.

Decided Oct. 4, 1973.

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir., 1970, 431 F.2d 409.

Charles E. Cooney, Jr., Syracuse, N. Y. (George R. Fearon, and Costello, Cooney & Fearon, Syracuse, N. Y., of counsel), for petitioner.

Donald Etra, Dept. of Justice, Washington, D. C. (Irving Jaffe, Acting Asst. Atty. Gen., Michael A. Levin, and Marc Hillson, Dept. of Labor, of counsel), for respondents.

John F. McElvenny, Philadelphia, Pa., for Pennsylvania Manufacturers' Assn., amicus curiae.

Leon L. Lemaire, Hartford, Conn., for Connecticut Business & Industry Assn., Inc., amicus curiae.

Before LUMBARD, FRIENDLY and FEINBERG, Circuit Judges.

FRIENDLY, Circuit Judge:

This petition to review so much of an order of the Department of Labor, 38 F.R. 10930, 10933 (1973), as set minimum numbers of lavatories in industrial establishments is an early illustration of the new tasks imposed on the federal courts of appeals by legislation enacted during the past decade which subjects to their review a wide variety of determinations, by agencies within the executive

branch or newly created commissions,[1] many of which are legislative in character and result from informal rulemaking. The difficulty of discharging the responsibilities Congress has created for us is exacerbated by the absence of statutory harmony with respect to the nature and scope of review.[2]

## I. *The Statutory Scheme*

We are here concerned with the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 et seq., already yclept OSHA. Section 5 of the Act, 29 U.S.C. § 654, requires every employer engaged in a business affecting commerce to furnish each employee "employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm" and to "comply with occupational safety and health standards promulgated under this chapter." The Secretary of Labor is given authority to promulgate such standards by a two-step process. For a two year period, the Secretary, without regard to the Administrative Procedure Act, could promulgate "any national consensus standard, and any established Federal standard, unless he determines that the promulgation of such a standard would not result in improved safety or health for specifically designated employees," 29 U.S.C. § 655(a). "National consensus standard" was defined, 29 U.S.C. § 652(9), to mean a standard which

(1) has been adopted and promulgated by a nationally recognized standards-producing organization under procedures whereby it can be determined by the Secretary that persons interested and affected by the scope or provisions of the standard have reached substantial agreement on its adoption, (2) was formulated in a manner which afforded an opportunity for diverse views to be considered and (3) has been designated as such a standard by the Secretary, after consultation with other appropriate Federal agencies.

After the end of this stop-gap period, standards were to be promulgated, modified or revoked by a rulemaking procedure specified in 29 U.S.C. § 655(b). Petitioner does not dispute that, broadly speaking, this is to be "notice and comment" rulemaking of the sort provided in § 4 of the APA, now 5 U.S.C. § 553. The proposed standard is to be published in the Federal Register, and interested persons are to be given thirty days to submit written data or comments. During the same period any interested person may file written objections and request a public hearing thereon. Within another thirty days the Secretary shall publish in the Federal Register a notice specifying the standard to which objections have been filed and setting a hearing. Within sixty days after the period for filing comments or, if objection and request for hearing have been timely filed, within sixty days after the hearing,

---

1. See Friendly, Federal Jurisdiction: A General View 34–35 and note 108 (1973). One should now add the Consumer Product Safety Act of 1972, 15 U.S.C. §§ 2051–2081, see for a full discussion, Scalia and Goodman, Procedural Aspects of the Consumer Product Safety Act, 20 U.C.L.A. Law Rev. 899 (1973), the Motor Vehicle Information and Cost Savings Act of 1972, 15 U.S.C. §§ 1901–1991, the Federal Water Pollution Control Act Amendments of 1972, 33 U.S.C. §§ 1251–1376, and the Noise Control Act of 1972, 42 U.S.C. §§ 4901–4918 (exclusive jurisdiction to review standards and regulations in the District of Columbia Circuit), to name a few.

2. As has been well said in a highly informative study, "The procedural provisions of these statutes are almost unbelievably chaotic." Hamilton, Procedures for the Adoption of Rules of General Applicability: The Need for Procedural Innovation in Administrative Rulemaking, 2 Recommendations and Reports of the Administrative Conference of the United States 834, 873 (1973), reprinted from 60 Calif.L.Rev. 1276, 1315 (1972). One would almost think there had been a conscious effort never to use the same phraseology twice.

the Secretary shall take action. Any standard, accompanied by a statement of the reasons for it, shall be published in the Federal Register, 29 U.S.C. § 655(e). The Secretary has fleshed out this provision by a regulation, 29 C.F.R. § 1911.-18(b), as amended, 37 F.R. 8665 (1972):

Any rule or standard adopted under paragraph (a) of this section shall incorporate a concise general statement of its basis and purpose. The statement is not required to include specific and detailed findings and conclusions of the kind customarily associated with formal proceedings. However, the statement will show the significant issues which have been faced, and will articulate the rationale for their solution.

The judicial review provision, 29 U.S. C. § 655(f), is as follows:

Any person who may be adversely affected by a standard issued under this section may at any time prior to the sixtieth day after such standard is promulgated file a petition challenging the validity of such standard with the United States court of appeals for the circuit wherein such person resides or has his principal place of business, for a judicial review of such standard. A copy of the petition shall be forthwith transmitted by the clerk of the court to the Secretary. The filing of such petition shall not, unless otherwise ordered by the court, operate as a stay of the standard. The determinations of the Secretary shall be conclusive if supported by substantial evidence in the record considered as a whole.

## II. *The Proceedings in the Department of Labor*

In May 1971, the Secretary, acting under § 655(a), promulgated a general sanitation standard, avowedly as a national consensus standard, which includ-ed the subject of lavatories that is here at issue. 36 F.R. 10593, 10594. This standard, 29 C.F.R. § 1910.141, was based on a 1968 American National Standards Institute (ANSI) general sanitation standard and required that in all places of employment whether industrial or nonindustrial

At least one lavatory * * * shall be provided for every 10 employees * * * or portion thereof, up to 100 persons; and over 100 persons one lavatory for each additional 15 persons or portion thereof.

Although petitioner now questions whether the ANSI standard met the statutory requirement for a national consensus standard, neither it nor, so far as appears, anyone else challenged this within the 60 days allowed by § 655(f).

On July 15, 1972, the Secretary issued, under § 655(b), a notice of rulemaking, 37 F.R. 13996, which proposed a substantial revision of the standards previously adopted. With respect to lavatories it was proposed to reduce the requirements for "offices" in a manner not here material but to retain those previously provided for "all other". *Id.* at 13998. The reason for the change was explained as follows:

Not all office workers need or do wash at the end of the working day. The number of lavatories required in the present standard and ANSI Z4.1 is based more on industrial occupancies, where the load on washing facilities is likely to be heavier, and concentrated at specific periods of the working day.

*Id.* at 13996. Comments and requests for a hearing having been received, the Secretary published a notice of informal hearing, 37 F.R. 20571. Such a hearing, the bulk of which was devoted to proposals other than that here at issue,[3] was held on November 8–10, 1972.

---

3. Notably the extent to which non-potable water could be used for cleaning, bathing or laundering.

Thereafter the Secretary promulgated, 38 F.R. 10930, 10933 (1973), a revision of 29 C.F.R. § 1910.141. This set up the following requirements for lavatories:

TABLE J–2

| Type of employment | Number of employees | Minimum number of lavatories |
|---|---|---|
| Nonindustrial—office buildings, public buildings, and similar establishments. | 1–15 | 1. |
| | 16–35 | 2. |
| | 36–60 | 3. |
| | 61–90 | 4. |
| | 91–125 | 5. |
| | Over 125 | 1 additional fixture for each additional 45 employees. |
| Industrial—factories, warehouses, loft buildings, and similar establishments. | 1–100 | 1 fixture for each 10 employees. |
| | Over 100 | 1 fixture for each additional 15 employees. |

No mention was made of the objections that had been proffered to the minima proposed for industrial establishments or of the reasons for rejecting them.

This petition for review of the portion of the standard concerning lavatories in industrial establishments followed. Another panel stayed enforcement of the standard pending argument of an expedited appeal; we continued the stay.

### III. *The Standard of Review*

The respondents ask us to apply a standard of review less severe than the substantial evidence test. They point to what they consider an anomaly in subjecting notice and comment rulemaking, which has here produced a regulation essentially legislative in nature, to the substantial evidence test, which under the APA, 5 U.S.C. § 706(2)(E), applies only to determinations resulting from adjudication, 5 U.S.C. § 554, and rules "required by statute to be determined on the record after opportunity for an agency hearing," 5 U.S.C. § 553(c). It is argued in support of this that the final sentence of § 655(f) says only that the Secretary's "determinations" must be supported by substantial evidence, not that the regulation as a whole must be so supported; respondents' clear implication is that § 655(f) imposes the substantial evidence test only upon such findings of *fact* as the Secretary announces when promulgating a rule.

■ Admittedly, the closing sentence of subsection (f) does not speak with the clarity of e. g., § 11(c) of the Consumer Product Safety Act, 15 U.S.C. § 2060(c).[4] Admittedly also, as will be discussed further in a moment, the meaning of the traditional sub-

4. The consumer product safety rule shall not be affirmed unless the Commission's findings under section 2058(c) of this title are supported by substantial evidence on the record taken as a whole.

Section 9(c) in turn, 15 U.S.C. § 2058(c), specifically requires findings on a broad range of matters, many of them intensely legislative in kind, including "that the promulgation of the rule is in the public interest." 15 U.S.C. § 2058(c)(2)(B).

stantial evidence test as applied to legislative-type decisions of policy is somewhat unclear. But there can be no question that the "determinations" to which § 655(f) applies the substantial evidence test, whatever precisely that may mean in the context, include the overall policy decision to promulgate a rule. The word "determinations" is used throughout § 655 to include policy choices as well as factual findings, and particularly to include promulgation of standards.[5] Evidence of an intent to diverge from the substantial evidence test with respect to informal rulemaking can readily be found when a statute refers only generally to the judicial review section of the APA, as, e. g., § 105 of the Traffic and Motor Vehicle Safety Act of 1966, 15 U.S.C. § 1394. Cf. Automotive Parts and Accessories Ass'n v. Boyd, 132 U.S.App.D.C. 200, 407 F.2d 330 (1968). See also Boating Industry Ass'n v. Boyd, 409 F.2d 408, 411 (7 Cir. 1969) (same statute); Bunny Bear, Inc. v. Peterson, 473 F.2d 1002, 1005–1006 & n.3 (1 Cir. 1973) (construing the judicial review provision of the Flammable Fabrics Act of 1967, 15 U.S.C. § 1193(e)(3)). But see Chrysler Corp. v. Department of Transportation, 472 F.2d 659, 667–671 (6 Cir. 1972) (Traffic and Motor Vehicle Safety Act). It can also be found when the APA is read along with a statute, whether antedating or postdating it, which confers power to make rules otherwise than "on the record after opportunity for an agency hearing," 5 U.S.C. § 553(c), as well as power of adjudication, and the substantial evidence test appears only in a section of the statute relating to review of adjudication. Such was the case, or at least was thought to be the case, with the Natural Gas Act of 1938, 15 U.S.C. § 717 et seq., discussed, with rather different conclusions, in Superior Oil Co. v. FPC, 322 F.2d 601 (9 Cir. 1963), cert. denied, 377 U.S. 922, 84 S.Ct. 1219, 12 L.Ed.2d 215 (1964), and City of Chicago v. FPC, 147 U.S.App.D.C. 312, 458 F.2d 731, 738–745 (1971), cert denied, 405 U.S. 1074, 92 S.Ct. 1495, 31 L.Ed.2d 808 (1972). But see Mobil Oil Corp. v. FPC, 483 F.2d 1238, 1264 (D.C. Cir.1973). But there is a formidable obstacle to such a reading when, as here, substantial evidence language appears in a section relating expressly to the determination of standards after notice and comment rulemaking.

We need not debate whether what thus seems a rather plain meaning could be overcome by legislative history pointing to the contrary. For here the history, while peculiar in one respect hereafter noted, lends much more support to adhering to the natural meaning than to departing from it. The bill as passed by the Senate provided for the informal rulemaking procedures now in the Act but was silent on the scope of review, thus leaving the latter question to the APA, 116 Cong.Rec. 37633–34 (1970); the House amended this so as to require a hearing on the record in accordance with 5 U.S.C. §§ 556 and 557, 116 Cong. Rec. 38725 (1970). As indicated, the Conference Committee adopted the Senate version with respect to rulemaking and the House version with respect to scope of judicial review.[6] Explaining this, the House managers stated:

> The "substantial evidence" test was the basis of court review in the House amendment; in the Senate bill, the more vigorous standards generally applicable to review of rules would have been applicable. \* \* \* [T]he use of the "substantial evidence" test

---

5. For example, the first step in promulgation of a standard is that the Secretary "determines" that the standard "should" be promulgated, 29 U.S.C. § 655(b)(1). Similarly § 655(e), requiring *inter alia* a statement of reasons for promulgation of any standard, is titled "Statement of reasons for Secretary's *determinations*" (emphasis supplied).

6. The bills also differed concerning the time and place for seeking review. Here the Senate version was adopted.

\* \* \* [was] accepted by the conferees.[7]

See The Job Safety and Health Act of 1970, BNA Operations Manual 129 (1971); 91st Cong., 2d Sess., 3 U.S.Code Cong. & Admin.News p. 5232 (1970).

Respondents argue that the conferees apparently assumed, however mistakenly, that the "standards generally applicable to review of rules" were "more vigorous" than the substantial evidence test, and that the conferees therefore must have been opting for what they deemed relatively weak review. Whatever the explanation of the House managers' having said "more vigorous" rather than "less vigorous," the intention to adopt the substantial evidence test for review as a tradeoff for the House's abandoning its insistence on rulemaking on the record, which would automatically have invoked that test under 5 U.S.C. § 706(2)(E), is apparent. Indeed, in contrast to the argument here made by counsel, the Department of Labor itself seems to have recognized the applicability of the substantial evidence rule. In 29 C.F.R. § 1911.5(a)(2), as amended April 29, 1972, 37 F.R. 8664, 8665, it stated:

> Section 6(b)(3) provides an opportunity for a hearing on objections to proposed rule making, and section 6(f) provides in connection with the judicial review of standards, that determinations of the Secretary shall be conclusive if supported by substantial evidence in the record as a whole. Although these sections are not read as requiring a rule making proceeding within the meaning of the last sentence of 5 U.S.C. 553(c) requiring the application of the formal requirements of 5 U.S.C. 556 and 557, they do suggest a Congressional expectation that the rule making would be on the basis of a record to which a substantial evi-

dence test, where pertinent, may be applied in the event an informal hearing is held.

▆ While we have felt constrained to determine and sustain the applicability of the substantial evidence test, it may well be that the controversy is semantic in some degree, at least in the context of informal rulemaking, and that it lacks the dispositional importance that respondents imply. In one of its first brushes with rulemaking, prior to the adoption of the APA, the Supreme Court said in National Broadcasting Co. v. United States, 319 U.S. 190, 224, 63 S.Ct. 997, 1013, 87 L.Ed. 1344 (1943), a case of notice and comment rulemaking:

> Our duty is at an end when we find that the action of the Commission was based upon findings supported by evidence, and was made pursuant to authority granted by Congress.[8]

In WBEN, Inc. v. United States, 396 F. 2d 601, 610–614 (2 Cir.), cert. denied, 393 U.S. 914, 89 S.Ct. 238, 21 L.Ed.2d 200 (1968), while we applied to F.C.C. rulemaking the "arbitrary and capricious" standard of 5 U.S.C. § 706(2) (A), it is hard to see in what respect we would have treated the question differently if we had been applying a "substantial evidence" test. The same can be said of Air Line Pilots Ass'n v. Quesada, 276 F.2d 892, 898 (2 Cir. 1960), cert. denied, 366 U.S. 962, 81 S. Ct. 1923, 6 L.Ed.2d 1254 (1961). Commentators have suggested that in the "class of cases in which the ground for challenging the agency action is the inadequacy of its evidentiary basis, it is difficult to imagine a decision having no substantial evidence to support it which is not 'arbitrary', or a decision struck down as arbitrary which is in fact supported by 'substantial evidence'," and that the true significance of the substantial evidence rule is in limiting the agency to the confines of the public

---

7. Respondents hint, by a "sic" in their brief, that "vigorous" may have meant "rigorous"; it does not appear to matter.

8. The Court had earlier held in a different context that "evidence" meant "substantial evidence," Washington, V. & M. Coach Co. v. NLRB, 301 U.S. 142, 146–147, 57 S.Ct. 648, 81 L.Ed. 965 (1937).

record. Scalia and Goodman, *supra,* 20 U.C.L.A. Law Rev. at 935, n. 138. Judge MacKinnon's opinion in City of Chicago v. FPC, *supra,* 458 F.2d at 741–745, to cite just one example, takes essentially this approach. While we still have a feeling that there may be cases where an adjudicative determination not supported by substantial evidence within the test of Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L. Ed. 456 (1951), would not be regarded as arbitrary or capricious,[9] see Charlton v. United States, 412 F.2d 390, 398 (3 Cir. 1969) (Stahl, J., concurring), in the review of rules of general applicability made after notice and comment rulemaking, the two criteria do tend to converge.

## IV. *The Effect of the Prior Consensus Standard*

██ An additional point must be considered before we reach the merits. Both petitioner and respondents devote a great deal of time to the questions whether the 1971 consensus standard— which was no less severe with regard to industrial buildings than the 1973 standard—was properly adopted and if not, whether it can be attacked at this late date. In its own terms, this debate started by petitioner is inapposite, since the 1973 regulations and not those of 1971 are here at issue. However, at one point respondents seem to seek to support the 1973 standards on the basis that the 1971 regulations were promulgated without objection and have been in effect for two years. This argument presumably would be that the 60-day time limitation of 29 U.S.C. § 655(f) would bar petitioner from challenging the same standard that has governed its members since May 1971.[10] Indeed, two later passages of respondents' brief, appearing in surprisingly unrelated contexts, hint with increasing boldness at some argument that petitioner cannot at this date attack the regulation; in the second passage, the argument takes a somewhat new form, more or less to the effect that the apparent noncompliance of some of petitioner's members with the 1971 standard affects their right to attack those now adopted.

 If in fact respondents mean to suggest any affirmative argument in defense of the 1973 regulations based on the promulgation without objection of consensus standards two years ago and on their having been in effect in the interim, such an argument must be reject-

9. *E. g.,* NLRB v. Nevada Consolidated Copper Corp., 316 U.S. 105, 62 S.Ct. 960, 86 L. Ed. 1305 (1942), one of the decisions replication of which the Taft-Hartley Act aimed to preclude, see Universal Camera Corp. v. NLRB, *supra,* 340 U.S. at 484–486, 71 S.Ct. 456 & n.22.

10. A variant of the contention, at which respondents hinted at oral argument, is that petitioner is barred by principles of *res judicata* from attacking the 1973 standards. The short answer to any *res judicata* claim would be that administrative action operates as *res judicata* only "[w]hen an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate," United States v. Utah Construction & Mining Co., 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966). As Professor Davis has stated, 2 Administrative Law Treatise § 18.08 at 597 (1958):

> Only what is adjudicated can be res judicata. Administrative action other than ad-

judication cannot be res judicata. Even if an exercise of the rule-making power depends on a finding of facts, neither the rule nor the finding is regarded as res judicata.

He adds in a footnote:

> The best reason for this is that res judicata affects the named parties to a proceeding and in rule making there are normally no named parties. It is when the action is deemed legislative and the parties are named that many of the difficulties arise.

Although there may be cases where line-drawing may be harder than Professor Davis' language would indicate, this is not one of them. No one was a party to the establishment of the consensus standard, and there was no hearing. Apart from this, the only fact that could have been established was that the ANSI standard met the requirements of 29 U.S.C. § 652(9) for a "national consensus standard," an issue of no relevance to review of the standard set under § 655(b).

ed. Congress imposed a 60-day limitation on attacks that were relevant to a particular set of standards. Petitioner's failure to attack the 1971 national consensus standard within 60 days does not preclude it from making a timely attack on a standard adopted by the Department as a matter of judgment after rulemaking proceedings under § 655(b). Similarly, we know of no principle that would warrant a denial of review because, as one gathers, many of petitioner's members did not comply with the 1971 standard in regard to the number of lavatories in industrial establishments. The Secretary had his remedy for this, 29 U.S.C. § 659; the record is silent how far he availed himself of it.

## V. *The Merits*

In its regulation previously quoted, 29 C.F.R. § 1911.5, the Department properly recognized "a Congressional expectation that the rule making would be on the basis of a record to which a substantial evidence test, where pertinent, may be applied in the event an informal hearing is held." This seems to imply a recognition of some responsibility on the part of the Department to explain and support the proposals it is advancing, at least when these have been opposed on substantial grounds. That burden was not here discharged.

The notice of rulemaking, 37 F.R. 13996, contained no affirmative justification for the proposal here at issue. While this was understandable since the requirements for industrial buildings were the same as in the previous national consensus standard, comments received before the hearing made the Department aware that petitioner and others challenged the propriety of the requirement on various grounds. Petitioner pointed out that New York required only half as many lavoratories for industrial employment and said that this had not resulted "in any evidence of adverse physiological effects or employee complaints." Eastman Kodak Co., a member of petitioner, proposed a more generally worded "performance" standard, with an addition to cover "those situations where exposures to specific materials indicate the need for special attention to on-the-job wash facilities." [11] KCL Corporation, a converter of flexible packaging materials, made even more pointedly what would seem *prima facie* to be this valid criticism against a uniform across-the-board requirement.[12] In an elaborate submission Spencer Foods, Inc. attacked the numerical table for various sanitary facilities as being by far the strictest standard in existence, unsupported by health needs, economically onerous, and insufficiently discriminating among different types of employment. Several parties suggested some kind of grandfather clause for existing facilities.

In light of all this—and there was more—it would have been eminently desirable for the Department to present at the outset of the hearing some justification for selecting what apparently is the highest numerical requirement in any state code and for applying this, with regard to existing buildings as well as new construction, not only to foundries and paint factories but to factories mak-

---

11. The New York Industrial Code provides generally for a sliding scale ranging from 1 wash basin for 1 to 20 employees to 8 for 151 to 175 and thereafter one for each 30. Where lead, arsenic or other such poisonous, infectious or irritating substances or dusts are present, or where food products are manufactured or handled, one wash basin must be provided for every ten employees.

12. It said:
 We fully agree with the logic that the type of employment helps to determine the load to be expected on washing facilities. We believe it wrong to classify all industries (from foundries to pharmaceutical manufacturers) together in this respect.
 We recommend that industries be classified and that the broad range of need for washing facilities within industry be recognized by a more detailed breakdown.
 . . . .
 Respondents' brief somehow manages—more accurately, does not manage—to convert this criticism, in the various forms in which it was made, into an advocacy of the proposal.

ing precision equipment or pharmaceuticals. If there are grounds for rejecting such distinctions, e. g., as being difficult to state or enforce, the Department could have explained this.[13] The Department neither proffered a witness at the outset nor put on any witness to oppose the objectors, at least two of whom (Kodak and AT&T) testified along the lines of the comments already cited. In fact we cannot find affirmative testimony by *any* witness, nor affirmative statements in the written submission of any party, in support of the stringent numerical requirements which the Department had proposed and to which several industries objected.

Respondents' brief makes much of a statement by Dr. Lorin Kerr of the American Public Health Association, "We are not talking about aesthetics; we're talking about protecting people's lives . . . we're talking on the basis of experience that in the absence of this, we just know, as health officers, we're going to be confronted with outbreaks of illness which can be prevented." Examination of the transcript shows that this had nothing like the force the brief attempts to give to it. Dr. Kerr had earlier stated that the Association's comments "will be confined specifically to the uses of non-potable water." The quoted remark was made in interrupting an exceedingly bland statement of a representative of the AFL–CIO that the number of toilets and sinks was a proper subject of regulation under OSHA and that he had no objection to the proposed numbers but was "not really terribly excited about that issue." Dr. Kerr was far more aroused then the labor representative and accordingly was advocating *some* numerical requirement; but he said nothing to support the precise figures proposed. The brief's statement that the labor representative "had no objection to the proposed lavatory requirements" likewise

conveys a false impression. All that can be read into the statement is that labor thought the requirement was sufficiently tough, not that it felt that nothing less would do or, if so, why. The other comments alleged by the brief to support the regulation are similarly taken out of context. The only legitimate reliance is on (1) the codes of five states, Arkansas, Michigan, New Hampshire, New Jersey, and Tennessee, of which the Department could take official notice but to which petitioner opposes twelve, Alabama, Connecticut, Illinois, Indiana, Massachusetts, Minnesota, New York, Oklahoma, Oregon, Pennsylvania, Virginia and Wisconsin, and (2) the code of the ANSI, the Building Officials and Code Administrators (BOCA) Basic Plumbing Code and the National Plumbing Code. The record sheds no light on the nature or interests of the latter organizations and the names of at least the last two convey the impression that they may have been formulating desirable standards for new construction rather than necessary changes in existing buildings. The endorsements of these codes by some industry officials were in support of the proposed relaxation of requirements for office buildings and not, as respondents' brief would lead one to believe, affirmative approval of the provisions for industrial buildings.

■■ We are far from saying that the Department is not free to impose the advanced standards of some states simply because these are outnumbered. As said in Senate Report No. 91–1282, 91st Cong., 2d Sess., p. 4, U.S.Code Cong. & Admin.News, p. 5180, "the efforts of the more vigorous states are inevitably undermined by the shortsightedness of others," and one of the great functions now served by the Commerce Clause is to enable Congress to prevent this. The point is rather that when the Department imposes a standard considerably more stringent than that which

13. The briefs of petitioner and respondents show that, in addition to New York, see n.11 supra, such distinctions are made in Massachusetts, Michigan, New Hampshire, Pennsylvania, Virginia and Wisconsin. There may well be more since the briefs do not cite rules from anything like all the states.

apparently has been found satisfactory by many states with a long history of protection to industrial workers, and particularly when it does so over explicit objections grounded on that history, then it has an obligation to produce some evidence justifying its action. We can find none in the record here. We simply do not know whether the five states deliberately rejected what the twelve had found adequate and, if so, why, or whether they routinely adopted the ANSI standards without inquiring whether, at least for many industries, something less would do.[14]

 Quite apart from the lack of evidence to support the standards and their consequent arbitrary and capricious nature, we must remand the case because of the Department's failure to live up to its own regulation, 29 C.F.R. § 1911.18(b), requiring, in language that goes beyond the letter but fulfills the spirit of 5 U.S.C. § 553(c) and 29 U.S.C. § 655(e), that any standard shall be accompanied by a statement which "will show the significant issues which have been faced, and will articulate the rationale for their solution." All that the Department said was, 38 F.R. 10932:

> 12. Proposed § 1910.141(d)(2)(i) would have required lavatories to be provided in accordance with proposed table J–1. As with toilet facilities, many comments took issue with the numbers used in the proposed table. Several commentators pointed out that while the proposal was suitable for factory and industrial workplaces, it was too restrictive with respect to office buildings and similar establishments, where there is less of a need for washing facilities. These comments have merit, and the minimum lavatory requirements are changed accordingly.

Apart from what we deem a considerable overstatement in the third sentence, this wholly failed to "articulate the rationale" for the solution the Department had adopted. As Judge McGowan said in Automotive Parts & Accessories Ass'n v. Boyd, 132 U.S.App.D.C. 200, 208, 407 F.2d 330, 338 (1968), in reference to the requirement of 5 U.S.C. § 553(c) of "a concise general statement" of the basis of rules adopted after informal rulemaking:

> These adjectives must be accommodated to the realities of judicial scrutiny, which do not contemplate that the court itself will, by a laborious examination of the record, formulate in the first instance the significant issues faced by the agency and articulate the rationale of their resolution. We do not expect the agency to discuss every item of fact or opinion included in the submissions made to it in informal rule making. We do expect that, if the judicial review which Congress has thought it important to provide is to be meaningful, the "concise general statement of * * * basis and purpose" mandated by Section 4 will enable us to see what major issues of policy were ventilated by the informal proceedings and why the agency reacted to them as it did.

While emphasizing that the judicial task in the review of informal rulemaking differed from that in the review of adjudication or rulemaking on the record, he added:

> This exercise need be no less searching and strict in its weighing of whether the agency has performed in accordance with the Congressional

---

14. A supplemental brief received from petitioner too late for inclusion in the slip version of this opinion adds five states to the five already listed as having imposed standards as strict as those promulgated by the Department of Labor—Alaska, Georgia, Idaho, Kansas and Montana—but counters these by increasing by fifteen the previous list of twelve on the other side—adding California, Florida, Hawaii, Louisiana, Maine, Mississippi, Missouri, Nebraska, North Carolina, Rhode Island, South Carolina, Texas, Utah, Vermont and West Virginia. The brief also suggests Tennessee should be classified with the latter group rather than the former, which would bring the score to 28 to 9, rather than the 12 to 5 mentioned in text.

purposes, but, because it is addressed to different materials, it inevitably varies from the adjudicatory model. The paramount objective is to see whether the agency, given an essentially legislative task to perform, has carried it out in a manner calculated to negate the dangers of arbitrariness and irrationality in the formulation of rules for general application in the future.

Although the court sustained the standard at issue in *Automotive Parts,* it did so on the basis of evidence and explanation far more convincing than here.

 We must confess we are not so sanguine as was Judge McGowan whether judicial review of legislative standards resulting from informal rulemaking will ultimately prove to be feasible. Courts may well end up doing much less than Congress intended or, a more likely and graver threat in these days of judicial activism, much more than Congress had wished. Despite our dissatisfaction with the Department's performance here, if we were free to make the choice of policy much could be said for the wisdom of Mr. Justice Brandeis in Pacific States Box & Basket Co. v. White, 296 U.S. 176, 186, 56 S.Ct. 159, 163, 80 L.Ed. 138 (1935), that "where the regulation is within the scope of authority legally delegated, the presumption of the existence of facts justifying its specific exercise attaches alike to statutes, to municipal ordinances, and to orders of administrative bodies." But it is plain that this was not the policy choice that Congress made in enacting OSHA and many other regulatory statutes of the last decade. With the agencies and the courts in a new form of uneasy partnership, compare Scripps-Howard Radio, Inc. v. FCC, 316 U.S. 4, 15, 62 S.Ct. 875, 86 L.Ed. 1229 (1942), the former must take reasonable steps to enable the latter to carry out the task that Congress has imposed upon them. See Hamilton, *supra,* 2 Recommendations and Reports of the Administrative Conference of the United States at 891–894; 60 Calif.L.Rev. at 1333–36. The provisions of 29 C.F.R. §§ 1911.5(a)(2) and 1911.18(b) were commendable steps by the Department in that direction. Unhappily the performance here did not meet the promise. When Congress has required us to review standards established by the Department—as we see it, under the substantial evidence test—we must insist on something more than an *ipse dixit,* now sought to be supported by references by counsel, compare Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168–169, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962); NLRB v. Metropolitan Life Ins. Co., 380 U.S. 438, 443–444, 85 S.Ct. 1061, 13 L.Ed.2d 951 (1965), to the codes of a small minority of the states without the slightest explanation why these are to be preferred over the majority. In a case where a proposed standard under OSHA has been opposed on grounds as substantial as those presented here, the Department has the burden of offering *some* reasoned explanation. As Mr. Justice White said in Burlington Truck Lines, Inc. v. United States, *supra,* 371 U.S. at 174, 83 S.Ct. 239, 249, although, to be sure, in the context of a licensing order, the agency "must act with a discriminating awareness of the consequences of its action. It has not done so here."

The portion of 29 C.F.R. § 1910.-141(d)(2) relating to the number of lavatories required for industrial employment is vacated, and the cause is remanded to the Department of Labor for further proceedings consistent with this opinion.