Peter J. BRENNAN, Secretary of
Labor, Petitioner,

v.

**OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION** and Gerosa, Incorporated, Respondents.

No. 280, Docket 73–1428.

United States Court of Appeals,
Second Circuit.

Submitted Jan. 10, 1974.

Decided Feb. 11, 1974.

Irving Jaffe, Acting Asst. Atty. Gen., Walter H. Fleischer, Robert M. Feinson, Stephen F. Eilperin, Michael H. Stein, Attys., Dept. of Justice; William J. Kilberg, Solicitor of Labor; Benjamin W. Mintz, Associate Solicitor for Occupational Safety and Health; Michael H. Levin, Counsel for Appellate Litigation; Douglas R. Earle, Washington, D. C. for petitioner.

Cunningham & Kaming, P. C., New York City, for respondent Gerosa, Incorporated.

Before KAUFMAN, Chief Judge, and SMITH and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

The Secretary of Labor petitions for review of an order of the Occupational Safety and Health Review Commission, which held that respondent Gerosa, Incorporated (the Company) did not violate a safety regulation promulgated by the Secretary under the Occupational Safety and Health Act of 1970 (the Act). 29 U.S.C. §§ 651 et seq. As we have recently noted,[1] the Act is but one of many recent statutes that call upon the federal courts to deal with new and difficult problems. This is apparently the first enforcement proceeding we have had under the Act.[2] Specifically, the Secretary complains that the Company violated 29 C.F.R. § 1926.550(a)(5) (the Regulation)[3] by failing to designate a competent person "to make sure" that a crane under its control was "in safe operating condition" before and

---

1. Associated Indus., Inc. v. United States Dep't of Labor, 487 F.2d 342, 344–345 & n. 1 (2d Cir. 1973).

2. We have reviewed the Secretary's promulgation of health standards under the Act.

See Associated Indus., Inc. v. United States Dep't of Labor, supra note 1.

3. At the time of the citation, the Regulation appeared at 29 C.F.R. § 1518.550(a)(5).

during use. Because we believe that the Commission misinterpreted the Regulation's designation requirement, we grant the petition for review and vacate the Commission's order.

## I

The undisputed facts are as follows: In October 1971, a worker was killed because a crane, rented by the Company and staffed by its employees, an operator and an oiler, went out of control.[4] The crane was being used to raise steel columns into place during the construction of a power plant. The day before the accident, the crane was assembled at the worksite, and the operator conducted a "test run" of the crane, raising the boom and letting it down again. At this point, the boom fell to the ground. A crane mechanic was promptly called to the scene but, before he could arrive, the oiler and the operator made adjustments which seemed to restore the crane to normal working order. These adjustments satisfied the mechanic, and the crane lifted one column into place before high winds curtailed its operations for the day. The next morning, the oiler, following normal procedure, ran the crane through a test run without incident, raising, lowering, and swinging the boom. However, while lifting the first steel column of the day, the boom went out of control, struck a concrete pole and fell free, fatally injuring the worker.

The crane was inspected the day after the accident by a police detective, expert crane mechanics from the manufacturer and the crane servicing company, and two Department of Labor compliance officers. The inspection revealed that the boom brake bands were coated with a greasy substance and that the backup system to the boom brakes was inoperative because of a missing clevis pin. On the basis of this inspection, the Secretary cited the Company for a violation of the Regulation, which deals with cranes and derricks, and provides as follows:

> The employer shall designate a competent person who shall inspect all machinery and equipment prior to each use, and during use, to make sure it is in safe operating condition. Any deficiencies shall be repaired, or defective parts replaced, before continued use.

The Secretary claimed that the Company had not followed adequate safety inspection procedures and that it had failed to designate a competent person to inspect the crane for safety before and during each use. A penalty of $400 was assessed, and the Company elected to contest the citation and assessment.

A hearing was held before a Commission judge (the Hearing Judge), at which the operator and those who had inspected the crane testified; only the crane service representative testified for the Company. After reviewing the testimony, the Hearing Judge affirmed the citation and proposed penalty, noting that the evidence against the Company "is so clear and compelling as to require but little discussion." Relying on the operator's testimony that neither he nor the oiler was detailed to conduct any safety inspection of the crane, the judge concluded that the Company had violated the designation requirement of the Regulation. Characterizing a crane as "at best an inherently dangerous instrumentality," he interpreted that requirement to demand "specific and positive action" by an employer to inform its employees of their inspection duties. Further, the Hearing Judge implicitly held that the inspection procedures themselves were inadequate under the Regulation for omitting visual and physical inspection of the boom lift mechanism; in his view, the greasy brake bands and inoperative backup system were readily detectable defects, which exposed the Com-

---

4. The Commission found, over the Company's objections, that this degree of control over the crane imposed upon the Company the duty to comply with the Regulation. This finding is not questioned in this court.

pany's employees to considerable danger and caused a loss of life.

The Company obtained discretionary review, under 29 U.S.C. § 666(i), by the three-man Commission, which set aside the Hearing Judge's decision and vacated the Secretary's citation. The Commission held that under industry practice the assignment of a competent oiler and operator to a crane was, "albeit not specifically stated," a designation in compliance with the Regulation. In addition, the Commission ruled that the Regulation requires only a reasonable inspection and that this requirement was satisfied by the test run procedure. According to the Commission, the defects found by the Hearing Judge were not discoverable by reasonable inspection. Following the Commission's decision, the Secretary brought this petition for review, under 29 U.S.C. § 660(b).

## II

■ Before turning to the merits, we think it useful briefly to discuss the Act itself, which has been called "the most revolutionary piece of 'labor' legislation since the National Labor Relations Act."[5] Whether that assessment be hyperbolic or not, there can be no doubt of the significance of a statute which affects an estimated 4.1 million business establishments with 57 million employees.[6] Several features of the statute are of immediate significance. The dramatic legislative history of the Act[7] demonstrates that Congress regarded it as an important piece of remedial legislation, designed to reduce "work-related injuries and illnesses," which cause "ever-increasing human misery and economic loss." S.Rep.No.91–1282, 91st Cong., 2d Sess. (1970), quoted at 1970 U.S.Code

Cong. & Admin.News, p. 5177. Each year prior to the passage of the Act, 14,000 workers died and 2.2 million were disabled by accidents in the workplace.[8] Congress hoped to achieve its objective of preventing accidents by encouraging employers "to institute new and to perfect existing programs for providing safe and healthful working conditions." 29 U.S.C. § 651(b)(1). The Act contains a section imposing upon employers a general duty to provide a safe work environment. 29 U.S.C. § 654(a)(1). However, Congress apparently placed primary reliance upon promulgation by the Secretary of specific regulations, such as the one in this case, which the statute commends employers to obey. 29 U.S.C. § 654(a)(2); S.Rep.No.91–1282, supra, 1970 U.S.Code Cong. & Admin. News at pp. 5185–5186.[9] Thus, it is especially important that these regulations be construed to effectuate congressional objectives. Cf. A. H. Phillips Co. v. Walling, 324 U.S. 490, 493, 65 S.Ct. 807, 89 L.Ed. 1095 (1945); Reliable Coal Corp. v. Morton, 478 F.2d 257, 262 (4th Cir. 1973). While the Regulation before us is limited to cranes and derricks, and the proposed penalty is small, the potential impact of the Commission's decision is large indeed. There have been many regulations issued under the Act similar to the one involved here.[10]

■ The Company claims that the only question before us is whether the Commission's order, under 29 U.S.C. § 660(a), (b), is "supported by substantial evidence on the record considered as a whole. . . ." The Secretary maintains, however, that the issues here are essentially legal, involving interpretation of the designation and inspection requirements of the Regulation. At least

---

5. White & Carney, OSHA Comes of Age: The Law of Work Place Environment, 28 Bus.Law 1309 (1973) (White & Carney).

6. White & Carney 1309.

7. The legislative struggles, delays and compromises that led to the Act are recounted in BNA, The Job Safety and Health Act of 1970 at 13–21 (1971) (BNA).

8. BNA 13.

9. The Act also places obligations upon employees, 29 U.S.C. § 654(b), but final responsibility for compliance rests with the employer. S.Rep.No.91–1282, supra, 1970 U.S.Code Cong. & Admin.News at p. 5187.

10. E. g., 29 C.F.R. § 1926.803(a)(1); 29 C.F.R. § 955(b)(3) & (8).

as to the former, the Secretary is undoubtedly correct. We will assume that our role, then, is to decide whether the Commission's interpretation of the Regulation is unreasonable and inconsistent with its purpose, the normal standard for review of the interpretation of a regulation by the agency charged with its administration. E. g., Udall v. Tallman, 380 U.S. 1, 16–17, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); Bowles v. Seminole Rock Co., 325 U.S. 410, 413–414, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945); Jno. McCall Coal Co. v. United States, 374 F.2d 689 (4th Cir. 1967). This assumption may be unduly deferential to the Commission, since the Act entrusts only adjudicatory functions to the Commission while assigning rulemaking power and initiation of enforcement proceedings to the Secretary.[11] Indeed, the rule of the cited decisions appears to apply with full force only to a long-standing agency interpretation, see, e. g., Wilderness Soc'y v. Morton, 156 U.S.App.D.C. 121, 479 F. 2d 842, 864–865, cert. denied, 411 U.S. 917, 93 S.Ct. 1550, 36 L.Ed.2d 309 (1973), certainly not the case here, when the Act had been effective for less than two years at the time the Commission ruled. In any event, we need not pursue these thoughts further because we believe that the Commission's interpretation cannot stand even if its views are given the deference called for under the authorities cited above.[12]

The issue before us is the meaning of "designate" in the Regulation:[13] Can this be done tacitly, as the Commission held, or must the "competent person" be explicitly told that he is charged with inspecting for safety? The word itself strongly supports the view of the Hearing Judge and the Secretary that the Regulation requires "specific and positive action" by an employer to inform an employee of the existence and nature of his safety inspection duties. In its ordinary usage, "designate" connotes formal selection and notification, both of which were absent from the employer's conduct here.

More importantly, the Secretary's interpretation seems far better calculated than the Commission's to achieve the congressional goal of accident prevention. If the Commission's position were accepted, an employee relied upon to "make sure" that machinery "is in safe operating condition" might not be aware of his duty. However strongly industry inspection practices may be established, there will always be employees who are inexperienced or inclined to neglect their inspection duties. Only the Secretary's interpretation offers any assurance that such workers will know of their responsibilities and take them seriously. Further, under the Commission's view, an employer could satisfy the designation requirement merely by relying, without inquiry, on his employee's competence and familiarity with industry practices. Here, for example, the Company's own witness testified that its knowledge of the oiler's and the operator's qualifications at the time they were assigned their jobs rested solely on the representations of their union. Such an interpretation seems to us to disregard the

---

11. For an example of the sharp conflict created by this division of authority, see Brennan v. OSHRC (*Brent Towing Co.*), 481 F. 2d 619 (5th Cir. 1973), characterizing a dispute between the Secretary of Labor and the Commission as "an administrative whirlwind of . . . minor proportions." Id. at 620.

12. For the same reason, we put to one side the perhaps simplistic thought that the meaning of a regulation might best be fathomed by its author, here the Secretary. But see Brennan v. OSHRC (*Bounds*), 488 F.2d 337 (5th Cir. 1973).

13. 29 C.F.R. §§ 1926.32(h) & (d) together define "designated person" as:

> . . . [A] person approved or assigned by the employer to perform a specific type of duty or duties or to be at a specific location or locations at the jobsite.

This definition, however, does not resolve the issue before us—whether the employer must inform the employee that he has been so designated.

admonition of Congress that final responsibility for complying with the provisions of the Act rests with the employer, see note 9 supra, and to overlook the fact that congressional dissatisfaction with existing industry practices was a major impetus behind passage of the Act.

■■ Accordingly, we conclude that under the Regulation an employer does not properly "designate" an inspector unless it explicitly informs him of the existence and nature of his inspection duties. On this construction of the Regulation, it is clear that the Company failed to live up to its requirements.[14]

### III

The Secretary claims that the Commission erred in another respect. The Commission held that the safety inspection required by the Regulation need only be a "reasonable" one, and that the Company employees here met that standard. While agreeing with the former conclusion, the Secretary argues that the latter is wrong as a matter of law because the record clearly shows that a simple visual safety inspection of the boom lift mechanism, which the oiler and operator failed to make, would have revealed the defects. The Secretary's position is a strong one, since both expert crane mechanics, one of whom was the Company's only witness, agreed that "anybody could see" that the clevis pin was missing, and both the detective and one of the compliance officers, neither of whom was an expert crane inspector, quickly observed that the brake bands were coated with grease. However, we need not consider this question further, since, for the reasons stated in Part II supra, the Commission's order should be set aside in any event.

■ Finally, the Company argues that we should not grant the petition for review because it was deprived of important procedural rights by the Hearing Judge. The Company complains that it was denied access to investigatory notes and reports, prepared by two Labor Department compliance officers, which it needed to impeach the officers' direct testimony. The record shows, however, that the Secretary made all the documents prepared by one officer available to the Company, and that the direct testimony of the other related only to the computation of the proposed penalty. In any event, on this point, as well as on the Company's additional claim that the Hearing Judge improperly restricted its cross-examination, we find no abuse of discretion or prejudicial error.

■ Accordingly, we grant the petition for review, vacate the Commission's order, and enforce the Secretary's amended citation and proposed penalty.[15]

14. While it is true that the Commission stated "It is not known whether the respondent [the Company] specifically instructed either the operator or the oiler to inspect," there was no evidence in the record that the Company explicitly told either the oiler or the operator of their inspection duties, and the Company has not made that claim in this court or before the Commission. Rather, the operator testified, as the Hearing Judge noted, that neither he nor the oiler was detailed to conduct any safety inspection of the crane. Any finding to the contrary would, on this record, have to be set aside.

■■

15. Because the Commission has broad powers of review of the Secretary's proposed penalties, see 29 U.S.C. §§ 659(c), 666(i); Brennan v. OSHRC (*Interstate Glass Co.*), 487 F.2d 438 (8th Cir. 1973), we would be inclined to remand to the Commission if the Company had substantial objections to the penalty. However, the Company raised no objections to the penalty in this court and only frivolous ones below. Under these circumstances, a remand would be a mere formality.