# Department of Justice Views on the Bumpers Amendment to the Administrative Procedure Act

[The following letter to the Chairman of the House Judiciary Committee, initially drafted in the Office of Legal Counsel at the request of the Assistant Attorney General for Legislative Affairs, presents the Department of Justice's views on amendments to the Administrative Procedure Act's (APA's) provisions for judicial review of agency action proposed by Senator Bumpers. In essence, the so-called Bumpers amendment sought to achieve greater congressional control over federal agency actions by giving the federal courts broad and relatively undefined new powers in reviewing agency rules. The letter points out that the proposed amendments to the APA would transfer to the federal courts responsibility for making policy choices now made by agencies, and that they would disrupt the regulatory process in major and unforeseeable ways.]

May 13, 1980

THE CHAIRMAN OF THE COMMITTEE ON THE JUDICIARY OF
 THE HOUSE OF REPRESENTATIVES

MY DEAR MR. CHAIRMAN: This presents the Department of Justice's views regarding the so-called Bumpers amendment to the Administrative Procedure Act's (APA's) provisions for judicial review of agency action, as recently revised with the approval of Senator Bumpers. The revised amendment would eliminate any "presumption of validity" that a reviewing court might accord agency action, except when a rule is to be relied upon as a defense, such as by private parties, in civil or criminal actions. It would amend 5 U.S.C. § 706(2)(C) by requiring a court, when agency action is challenged as in excess of statutory jurisdiction, authority or limitation or short of statutory right, to determine that the action is authorized "expressly" or by "clear implication" in the statute or "other relevant legal materials." Finally, it would amend 5 U.S.C. § 706(2)(E) by making the "substantial evidence" test applicable to all informal rulemaking conducted pursuant to 5 U.S.C. § 553 and all adjudications under 5 U.S.C. § 554.

These provisions would constitute substantial alterations in existing principles governing judicial review of agency action and, in our view, would have seriously destabilizing effects on administrative law. They would not, in our view, satisfy the purposes they are said to serve, and they would have major counterproductive consequences, which would include making the administrative process more confused and prone to delay than it already is. By prompting more and more complex litiga-

tion regarding agency action, they would also impose significant burdens on already overburdened courts.

At bottom, the provisions rest on a contradiction. They are put forward as a response to a perception that agencies should be more politically accountable to Congress and hence the people, but in fact they would replace the agencies with federal judges, members of the branch of government which is constitutionally immune from the ordi-' nary methods of political accountability that control the exercise of discretion under law. We doubt that there is any reason to assume, as the Bumpers amendment does, that the judiciary's conclusions on complex policy choices arising in administrative proceedings will necessarily be seen by Congress as more "correct" than those of agencies. It may be anticipated that in the future, as in the past, courts will determine in various cases that agencies should have imposed regulatory requirements more rigorous or otherwise different from those they have imposed. *Cf. Phillips Petroleum Co.* v. *Wisconsin,* 347 U.S. 672 (1954); *Natural Resources Defense Council, Inc.* v. *Costle,* 568 F.2d 1369 (D.C. Cir. 1977). If Congress wishes to make agencies more accountable to its will, it can do so directly, such as by more detailed substantive legislation or oversight hearings. To seek to do so indirectly by giving broad, new powers and duties to courts is to risk jeopardizing basic values of democratic governance, according to which Congress, not the courts, should assume primary responsibility for determinations affecting public policy.

We will focus on the three main aspects of the revised Bumpers amendment.

### I. The "Presumption of Validity"

The revised amendment would provide that a reviewing court shall make determinations about a rule "without according any presumption of validity" to any rule, except where a rule is set up as a defense, such as by a private party, to a civil or criminal action.

This provision is said to be designed to prevent "blind or automatic" judicial deference to agency rules. However, it is incorrect as an empirical matter to suggest that courts blindly defer to agencies. The courts can and do "speak the final word on interpretation of law, both constitutional and statutory." [1] As to matters involving an admixture of factual and policy issues, the Supreme Court has plainly instructed lower federal courts to subject agency rules to a "searching and careful" and "thorough, probing, in-depth review." *Citizens to Preserve Overton Park* v. *Volpe,* 401 U.S. 402, 415–16 (1971). The lower federal courts have

---

[1] Report of the Attorney General's Committee on Administrative Procedure, *Administrative Procedure in Government Agencies,* S. Doc. No. 8, 77th Cong., 1st Sess. 78 (1941) (hereinafter cited as Report of the Attorney General's Committee). *See Volkswagenwerk* v. *FMC,* 390 U.S. 261, 272 (1968); *Morton* v. *Ruiz,* 415 U.S. 199, 237 (1974).

heeded such directions by carefully and thoroughly reviewing agency rules.[2]

Although the phrase "presumption of validity" is undefined, it might be said to encompass a wide variety of doctrines under which courts reasonably give weight to agency determinations in view of the agency's specialized experience, familiarity with the underlying statutes and immersion in day-to-day administrative operations that reveal practical consequences of different courses of action.[3] If this be its meaning here, then its elimination from the law would be senseless and dangerous in terms of its implications for the respective roles of courts and agencies.

For instance, it is rational for courts to defer to an agency's interpretation of its own statute, barring contrary indication in the legislative record, because agencies have specialized knowledge and exposure pertinent to the process of properly construing their organic acts. *See, e.g., NLRB* v. *Seven-Up Bottling Co.,* 344 U.S. 344, 349 (1953); *Wilderness Society* v. *Morton,* 479 F.2d 842, 866 (D.C. Cir.) (en banc), *cert. denied,* 411 U.S. 917 (1973). Further, it bears noting that historically agencies have been established in order to gain for society the benefits of expert, specialized decisionmaking on complex issues of policy.[4] It would be inconsistent to rely on such bodies without permitting courts, in the context of reviewing agency rules, to ascribe to agency determinations a presumption of validity in appropriate circumstances. There are, as Judge Learned Hand noted, issues as to which an agency's "specialized experience equips it with major premises inaccessible to judges." *NLRB* v. *Universal Camera Corp.,* 190 F.2d 429, 430 (2d Cir. 1951). It would also be inappropriate in a democratic system to permit courts to substitute their policy preferences for those of agencies. Since the notion that courts in appropriate cases can accord agency views a presumption of validity is both a basic tool of rational judicial decisionmaking and a bulwark against usurpation by the judiciary of the policy-making role of agencies, its elimination would promise to be significantly counterproductive.[5]

---

[2] *See, e.g., Katharine Gibbs Sch.* v. *FTC* 612 F.2d 658 (2d Cir. 1979); *Ethyl Corp.* v. *EPA,* 541 F. 2d 1 (D.C. Cir.) (en banc), *cert. denied,* 426 U.S. 941 (1976). Indeed, if courts were not carefully reviewing rules, as we believe they are, then it would be unrealistic at the outset to suppose that courts could be a reliable means of preventing agency "excess." But the Bumpers amendment presumes that courts should be relied on to prevent such "excess." There is thus a deep incoherence in the argument for the amendment: it asserts (wrongly, in our view) that courts blindly defer to agencies, and it would seek to rely on courts (inappropriately, in our view) to remedy the problem of agency "excess."

[3] *See generally* Woodward & Levin, *In Defense of Deference: Judicial Review of Agency Action,* 31 Ad. L. Rev. 329, 331–35, 337–38 (1979).

[4] *See* J. Landis, The Administrative Process (1938). *See also* Report of the Attorney General's Committee, note 1 *supra,* at 77: "[W]e expect judicial review to check—not to supplant—administrative action. Review must not be so extensive as to destroy the values—expertness, specialization, and the like—which . . . were sought in the establishment of administrative agencies."

[5] It is no response to suggest that legal issues can be distinguished from "fact" and "policy" issues, and that only the first set of issues would be affected by the elimination of any presumption of validity of rules. It has been long recognized that there is no such "fixed distinction" in administrative law, *see, e.g.,* Dickinson, Administrative Justice and the Supremacy of Law 55 (1959), for many issues subsume legal, factual, and policy questions.

Its elimination would also undermine necessary certainty and stability in the law. An agency rule would need only to be challenged in court to lose its status as presumably valid until found otherwise. The products of federal agencies thus would be unreasonably denied the basic protection normally accorded most acts of individuals and groups, namely, the assumption that until proven otherwise, actors in society will be presumed to have behaved legally.

## II. "Express" or "Clear" Authority for Agency Action

The revised Bumpers amendment would provide that whenever agency action is challenged as not authorized by statute, the reviewing court must determine that it is authorized "expressly" or "by clear implication" in view of the statutory language and "other relevant legal materials."

This provision is said to be a means of preventing excursions by agencies beyond their statutory bounds. However, that purpose is already served by existing standards of judicial review, which require a court to set aside agency action found to be in excess of statutory jurisdiction, authority or limitations, or short of statutory rights. *See* 5 U.S.C. § 706(2)(C). Accordingly, there is no need to alter existing law to further the aim claimed for this provision, at least with respect to standards of judicial review.

Also, the proposed language raises the possibility that courts, in reviewing agency action, could be unable to use the flexible tools of statutory construction that have evolved as the necessary concomitants of broad delegations to agencies. For instance, if a statute does not explicitly anticipate a particular problem that arises in its implementation, and if the legislative history is silent on the point in issue—as happens not infrequently—a court would likely inquire whether the agency action is consistent with and "reasonably related to the purposes of the enabling legislation. . . ." *Thorpe* v. *Housing Authority of the City of Durham,* 393 U.S. 268, 280-81 (1969); *See Mourning* v. *Family Publications Service, Inc.,* 411 U.S. 356, 369 (1973). It might be argued that, under the proposed language, such a perfectly appropriate judicial inquiry would be barred by the requirement that agency action be authorized "expressly" or by "clear implication," whatever those terms may precisely mean. Such an argument fails to recognize that under statutes conferring broad powers on agencies, agencies often must assess widely competing values, interests or other factors in light of the

law, and frequently a given statute cannot plausibly be construed "clearly" to authorize or require one specific result of such a particularistic, policy-laden assessment.

In addition, the free-wheeling use by courts of a "clear implication" or "clear statement" doctrine, such as reflected in the proposed language, could represent a dangerous arrogation by the courts of the policy-making discretion that Congress has delegated to agencies.

### III. The "Substantial Evidence" Standard

The revised Bumpers amendment would amend the APA by making the "substantial evidence" standard applicable to all rulemaking and adjudication, even if they are not required by statute to be conducted on the record after opportunity for an agency hearing. Under the APA, the substantial evidence standard only applies to formal "on the record" decisionmaking, which usually involves a trial-type hearing. *See* 5 U.S.C. §§ 556, 557 & 706(2)(E).

This proposal rests on the mistaken premise that a higher standard of review of factual issues than that afforded by the "arbitrary and capricious" standard of review is needed. In fact, courts aggressively review factual issues arising in informal rulemaking under the arbitrary and capricious standard.[6] There is simply no demonstrated need to alter the present standard in order to prompt careful and searching judicial review.

Although the term "substantial evidence" is not a talismanic phrase of determinate meaning,[7] it involves, under the APA, a review of the whole record underlying the agency action. *See Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488 (1951). Informal rulemaking is not required to have any "record" encapsulating all the evidence on which a decision is based. At the most basic level, then, it is difficult to understand how a "substantial evidence" standard could be used across the board with respect to all informal rulemaking.[8]

Also, many, if not most, of the crucial determinations pertinent to informal rulemaking are of a general policy nature, and do not turn on the existence or nonexistence of specific "facts" so much as they turn

---

[6] *See, e.g., South Terminal Corp.* v. *EPA,* 504 F.2d 646, 671–76 (1st Cir. 1974); *State of Texas* v. *EPA,* 499 F.2d 289, 297 (5th Cir. 1974). *See also Union Oil Co. of Cal.* v. *FPC,* 542 F.2d 1036, 1041–44 (9th Cir. 1976).

[7] *See Associated Industries of New York State, Inc.* v. *U.S. Dept. of Labor,* 487 F.2d 342, 349 (2d Cir. 1973).

[8] *See* S. Breyer & R. Stewart, Administrative Law and Regulatory Policy 195 (1979) ("Since it presumes review on the basis of all of the relevant evidence, the substantial evidence standard in any event would be inappropriate in informal decision-making, which does not generate a trial-type record containing all of the relevant evidence.").

on the evaluation of probabilities, the balancing of objectives and the selection of methods to achieve given ends within statutory limits. It would be erroneous to assume that such decisions can be easily assimilated into a model of review designed especially for factual questions aired and tested in "on the record" proceedings. One could expect considerable confusion about the way in which any "substantial evidence" standard should apply with respect to such issues in informal rulemaking.

Also, one could expect confusion about the proper procedures that should be used to generate a "record" subject to review under a substantial evidence standard. At a minimum, agencies likely would move toward more formalized procedures in order to guard against possible adverse rulings by courts that the record was insufficient or improperly compiled.[9] This would make the administrative process slower and less efficient, the opposite of the results said by proponents of the Bumpers amendment to be sought. This would also make not only regulation but also *de*-regulation harder and more costly, further interposing counterproductive tendencies in the administrative process.

It is not a sufficient response to note that in some statutes, Congress has applied a substantial evidence standard to rulemaking not involving the full procedural formalities under 5 U.S.C. §§ 556 & 557. First, in such statutes, Congress has addressed the issue of what other than notice-and-comment procedures are required, thereby helping to obviate what would be one of the central confusions flowing from this proposal. Further, it simply does not follow from the fact that Congress has applied a substantial evidence standard to certain "hybrid" procedures, that the standard should be applied to all informal rulemaking. Even in the context of particular statutes, the combination of "hybrid" procedures and a substantial evidence test has contributed to confusion and an "absence of statutory harmony with respect to the nature and scope of review." *Associated Industries* v. *Dept. of Labor, supra* n. 7, 487 F.2d at 345. This sort of confusion would be multiplied should this proposal, imposing a higher standard of review without consideration of its appropriateness in a particular substantive context and without giving any attention to attendant procedural requirements under specific statutes, be adopted.

---

[9] *See Industrial Union Dept., AFL-CIO* v. *Hodgson,* 499 F.2d 467, 474 (D.C. Cir. 1974). *But see Vermont Yankee Nuclear Power Co.* v. *Natural Resources Defense Council,* 435 U.S. 519 (1978). *Compare, Mobil Oil Corp.* v. *FPC,* 483 F.2d 1238 (D.C. Cir. 1973), *with Phillips Petroleum Co.* v. *FPC,* 475 F.2d 842, 851-52 (10th Cir. 1973), *cert. denied sub nom. Chevron Oil Co., Western Division* v. *FPC,* 414 U.S. 1146 (1974).

## V. Conclusion

We believe that the revised Bumpers amendment, like the original Bumpers amendment, is an inappropriate means for achieving the desired goals of reforming the administrative process. Both would predictably prompt substantial counterproductive consequences. Both would upset long-established legal principles and foster basic confusion in administrative law while complicating and delaying the implementation and enforcement of statutes.

Sincerely,

ALAN A. PARKER
*Assistant Attorney General*
*Office of Legislative Affairs*
