**BOATING INDUSTRY ASSOCIATION and Holsclaw Brothers, Inc., Petitioners,**

v.

**Hon. Alan S. BOYD, Secretary of Transportation, Lowell K. Bridwell, et al., Respondents.**

**No. 16808.**

United States Court of Appeals Seventh Circuit.

March 27, 1969.

Rehearing Denied April 28, 1969.

Charles O. Verrill, Jr., J. Gordon Arbuckle, Patton, Blow, Verrill, Brand & Boggs, Washington, D. C., for petitioners.

Morton Hollander, Robert V. Zener, Department of Justice, Edwin L. Weisl, Jr., Asst. Atty. Gen., Washington, D. C., for respondents.

Before KNOCH, Senior Circuit Judge, and KILEY and FAIRCHILD, Circuit Judges.

KNOCH, Senior Circuit Judge.

The petitioners, Boating Industry Association and Holsclaw Brothers, Inc., seek review of an order of the Administrator of the Federal Highway Administration, Department of Transportation, which denied their request for reconsideration of Initial Federal Motor Vehicle Safety Standard 108, which was adopted pursuant to the National Traffic and Motor Vehicle Safety Act of 1966, Title 15 U.S.C. § 1392.

Standard 108 sets out lighting requirements for vehicles having an overall width of 80 inches or more. The petitioners, an association representing boat trailer manufacturers and one boat trailer manufacturer, seek an exception for boat trailers with respect only to identification, clearance and front sidemarker lamps.

The petitioners contend that the Administrator failed (1) to develop and rely on relevant motor vehicle safety data in adopting Standard 108, (2) to make appropriate public interest findings, (3) to adopt standards which

would accomplish the objectives of the Motor Vehicle Act, (4) to set standards that were reasonable, practicable, and appropriate for the type of vehicle involved, all as required by the Act, and instead arbitrarily imposed regulatory requirements without a rational basis.

■ The Act was designed to reduce traffic accidents and resultant injuries, Title 15 U.S.C. § 1381. The Secretary of Commerce, originally, and now the Secretary of Transportation, was empowered to establish safety standards, Title 15 U.S.C. § 1392(a), or minimum standards for motor vehicle or motor vehicle equipment performance, Title 15 U.S.C. § 1391(2), which includes trailers, § 1391(3), to be practicable, meeting the need for motor vehicle safety and stated in objective terms, § 1391(2). The Secretary was directed to issue initial standards which Congress directed him to base on existing safety standards, § 1392(h). The Secretary was directed to consult with State and interstate agencies, including legislative committees as he deemed appropriate, § 1392(f). He was further required to establish a National Motor Vehicle Safety Advisory Council, a majority of whom would be representatives of the general public including State and local governments, the remaining members to be representatives of motor vehicle and motor vehicle equipment manufacturers and motor vehicle dealers, § 1393.

■ As the federal standards (with an exception not here applicable) will preempt the field, § 1392(d), federal standards will automatically lower any more stringent existing State standards.

On October 8, 1966, an advance notice in the Federal Register invited suggestions for the Initial Standards. On November 30, 1966, Proposed Standards including Standard No. 108 were published; comments were invited. Lighting requirements for trailers were included but no response was received from the boat trailer industry. On February 3, 1967, the initial standards were published, including 108. Notice was given that Standard No. 108 would take effect on January 1, 1968.

Under date of August 10, 1967, counsel for the petitioner Association wrote the National Highway Safety Bureau of the Department of Transportation asking whether 108 applied to boat trailers, indicating a belief that the clearance, front side marker and identification lamps were impractical and unnecessary and suggesting that boat trailers might fall into the exemption of "pole" trailers. These are trailers for transporting long irregularly shaped loads as poles, pipes, or structural members which can sustain themselves as beams between supporting connections.

Under date of October 2, 1967, the Bureau advised that the single load of a boat did not conform to the definition of a pole trailer, and that the standard did apply to boat trailers. Suggestions were made for locating side marker lamps. There was a further exchange of correspondence, the Association contending that the strictest existing standards ought not to be adopted. Standard 108 was amended in December 1967 to eliminate front and rear clearance lamps for boat trailers provided that clearance lamps were placed at or near midpoint on the sides showing extreme width with amber to fore and red to rear. The deadline was extended to June 1, 1968. The Bureau's letter refers to the views expressed at a September 1967 industry meeting, subsequent discussions with representatives of the Association and extensive studies by the Bureau's technical staff in addition to consideration of existing federal and State regulations for lighting boat trailers, and studies specifically with respect to electrical load, an issue which the Association still feels has not been met.

When a petition for administrative reconsideration was denied (except for extension to June 1, 1968 of the effective date for rear side marker lamps) the petitioners appealed to this Court.

The petitioners contend that a record should have been developed to support a

finding that the equipment as manufactured prior to the adoption of federal standards created an unnecessary highway risk as a precedent to adopting new standards. Further petitioners argue that there is no record of evidence that the lights in issue would reduce risk of accidents. They feel that their question of electrical overload was improperly disposed of by a limited administrative finding since challenged by additional testing and evidence which the petitioners had not previously submitted but which they would now like to have considered. Because of the peculiar shape of boat trailers petitioners feel that the required lamps here disputed would be difficult to install, frequently obscured from view by the load and would not serve their normal function because the boat being carried would actually be the highest and widest part of the loaded trailer.

Because of emphasis on the desirability of identical lighting for all trailers of 80 inches or more in overall width, regardless of configuration, petitioners argue that arbitrary action has been taken in the absence of evidence that lack of standard means of identification creates an unnecessary highway risk or conversely that its use contributes to safety and they assert that its achievement has already been compromised by the exemption of pole trailers.

Section 1394(a) (3) of the Act provides for judicial review pursuant to § 10 of the Administrative Procedure Act, Title 5 U.S.C. § 706(2) which allows us to set aside agency action found to be arbitrary, capricious or in abuse of discretion.

We may also set aside agency action in a case subject to §§ 556 and 557 of Title 5, or otherwise reviewed on the record of an agency hearing provided by statute, where the agency action is unsupported by substantial evidence. Sections 556 and 557 deal with formal evidentiary hearings set up for administrative adjudication (with which we are not here concerned) and rule making where the statute requires rules to be made on the record after opportunity for an agency hearing. Title 5 U.S.C. § 553(c).

 The "substantial evidence" review of rule-making proceedings (which petitioners seem to be seeking here) is applicable only where the statute requires an agency hearing. California Citizens Bank Ass'n v. United States, 9 Cir., 1967, 375 F.2d 43, 53–54, cert. den. 389 U.S. 844, 88 S.Ct. 96, 19 L.Ed.2d 112; Borden Co. v. Freeman, D., N.J., 1966, 256 F.Supp. 592, 600–601, affd. 3 Cir., 1966, 369 F.2d 404, cert. den. 386 U.S. 992, 87 S.Ct. 1307, 18 L.Ed.2d 337.

 No agency hearing was required here and none was sought by petitioners. There was informal consultation and correspondence. The Act provides for consultation with various State, interstate and legislative committees, § 1393, and for the conducting of research and testing, § 1395, all of which is more compatible with informal rule-making where the Secretary relies on this type of data rather than limiting himself to the formally adduced evidence of an agency hearing. Pursuant to the informal rule-making procedures of the Administrative Procedure Act § 4, Title 5 U.S.C. § 553, notice was published and interested persons were given an opportunity to submit data. See American Airlines Inc. v. Civil Aeronautics Board, 1966, 123 U.S.App.D.C. 310, 359 F.2d 624, 629, cert. den. 385 U.S. 843, 87 S.Ct. 73, 17 L.Ed.2d 75, where the Court commented on the distinction between rule-making and adjudications, noting that rule-making is typically concerned with broad policy considerations rather than review of individual conduct.

We find no support for the charge that arbitrary action was taken. Each item of the standards adopted here had previously been adopted and continued in existence and evidently found feasible and useful. The Secretary complied with Congressional direction to base his initial standards on existing safety standards. The correspondence before us shows that consideration was given to

the suggestions and the arguments of the petitioners. The petitioners feel that there is little evidentiary value in the fact that some 36 States have followed, in some degree, the Uniform Vehicle Code provisions which the Secretary adopted. We think otherwise. We think that the experience of those States does indicate that these standards serve the purpose of motor vehicle safety. Similarly such evidence supports the conclusion that many States have found it feasible to make exceptions for pole trailers in existing standards. The provisions contained in Standard 108 are already being applied to boat trailers in various States and boat trailer manufacturers there must be complying with them.

As to the practical aspects of the problem, it seems to the Court manifestly clear that even if some of the required lamps are partially obscured on a loaded trailer, they are surely visible and helpful on an unloaded trailer and serve a safety purpose at all times. For example, a lamp on the side of a boat trailer may not always show the widest point of the trailer but it will render the trailer visible on a dark night to one approaching from the side. The use of different colors, amber and red, avoid the danger of one mistakenly believing that the rear of the vehicle has cleared an intersection.

We do not agree with the petitioners that the Secretary's jurisdictional findings were defective. It is clear that he found the Standard met the need for motor vehicle safety. It was unnecessary for him to specify that he used those terms as defined in the Act. The Act contains no formal requirements for such findings as the petitioners would seem to require. See United States v. Louisiana, 1933, 290 U.S. 70, 80, 54 S.Ct. 28, 78 L.Ed. 181; Pacific States Box & Basket Co. v. White, 1935, 296 U.S. 176, 186, 56 S.Ct. 159, 80 L.Ed. 138.

We find no adequate explanation for petitioners' failure to present the Secretary with all of their evidence on the subject of electrical overload. We have scrutinized the petition for reconsideration and Annex H thereto and are compelled to agree with respondents that it merely repeats in more elaborate form the arguments already submitted and considered. We find no justification for remand to take additional evidence.

The Order of the Secretary is affirmed.

Affirmed.