**BUNNY BEAR, INC., Petitioner,**

v.

**Peter G. PETERSON, Secretary of Commerce, Respondent.**

**No. 72–1265.**

United States Court of Appeals, First Circuit.

Heard Dec. 5, 1972.

Decided Feb. 7, 1973.

---

**1004**

Hiller B. Zobel, Boston, Mass., with whom Matthew Brown and Carl E. Axelrod, Boston, Mass., were on brief, for petitioner.

Gregory B. Hovendon, Atty., Dept. of Justice, with whom Thomas E. Kauper, Asst. Atty. Gen., Antitrust Div., William N. Letson, Gen. Counsel, U. S. Dept. of Commerce, Robert B. Ellert, Asst. Gen. Counsel, and Dicran B. Barian (Attorney-Adviser), National Bureau of Standards, U. S. Dept. of Commerce, Washington, D. C., were on brief, for respondent.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

CAMPBELL, Circuit Judge.

Petitioner, a crib mattress manufacturer, challenges a flammability standard issued by the Secretary of Commerce under the Flammable Fabrics Act ("the Act"), 15 U.S.C. §§ 1191–1202.[1] In essence, it requires mattresses, including crib mattresses, to pass a cigarette test, consisting of bringing a mattress in contact with a burning cigarette. 37 Fed.Reg. 11362 (June 7, 1972).

Petitioner asserts that the record of proceedings before the Commissioner does not support findings (1) that a standard for crib mattresses is needed to protect the public against unreasonable risk of fire; (2) that crib mattresses should be included within the standard adopted as generally applicable to all mattresses; and (3) that the standard, as applied to crib mattresses, is technologically practical. We affirm the standard.

The standard emerged from a rulemaking commenced June 10, 1970, when the Secretary published notice that flammability standards for mattresses might be needed, and invited comments. 35 Fed.Reg. 8944. A proposed standard was issued September 9, 1971 (36 Fed. Reg. 18095), comments being again invited. Comments from approximately 75 groups, many of them connected with industry, were received in response to the original notice and the later proposed standards; they were analyzed in written reports. Statistical data were gathered on bed fires across the nation; a consultant's study of such fires was obtained; and recommendations were received from members of the National Advisory Committee for the Flammable Fabrics Act.

In response to the proposed standard of September 9, 1971, the Secretary received a letter (the only comment relat-

---

1. Under the Act, interior furnishings, among other products, not conforming to flammability standards established by the Secretary are prohibited in interstate commerce. The Secretary is to investigate deaths, injuries and economic losses resulting from the accidental burning of such products; may conduct research into their flammability, and develop test methods; and "shall institute proceedings for the determination of an appropriate flammability standard (including conditions and manner of testing) or other regulation" whenever he finds, on the basis of such research, that a new flammability standard or other regulation "may be need-

ed to protect the public against unreasonable risk of the occurrence of fire leading to death or personal injury, or significant property damage." § 1193. Each standard must be "based on findings that such standard . . . is needed to adequately protect the public against unreasonable risk of the occurrence of fire leading to death, injury, or significant property damage, is reasonable, technologically practicable, and appropriate, is limited to . . . products which have been determined to present such unreasonable risks, and shall be stated in objective terms. . . ."

ing to crib mattresses) from counsel for the Juvenile Products Manufacturers' Association, Inc. (one of petitioner's present counsel). Counsel requested exclusion of crib-size mattresses as "infants and young children obviously do not smoke." This letter along with requests from others for the exclusion of many other types of bedding (such as water beds and sleeping bags) was considered; the Department staff, in its comments, recommended exclusion of the latter (because of non-flammability) but against exclusion of crib mattresses, stating,

> "Exemption of youth and crib mattresses is not recommended. While members of these age groups do not smoke, their parents frequently do, and the accidental dropping of a lighted cigarette on these mattresses while attending to a child is a distinct possibility."

Thereafter, the present standard was promulgated to include "crib mattresses including portable crib mattresses" but excluding, among others, "juvenile products pads such as car bed pads, carriage pads, basket pads, infant carrier and lounge pads" and the like.[2]

The wording of the Act invites confusion[3] over whether we must be satisfied that the Secretary's standard is "supported by substantial evidence" (5 U.S.C. § 706(2)(E)), or whether our review is measured under other clauses appearing in 5 U.S.C. § 706(2), including especially the "arbitrary capricious, . . . not in accordance with law" language of § 706(2)(A).

■ The provisions of the Act most in point are § 1193(d), making §§ 551 through 559 of the APA (encompassing and defining both rule-making and formal adjudication) applicable to the issuance of all standards or regulations or amendments; and § 1193(e)(3), authorizing judicial review by courts of appeals in accordance with Chapter 7 of Title 5 (the judicial review sections of the APA). Absent a statutory directive for a hearing, we think the Secretary correctly interpreted the Act and the relevant APA provisions as contemplating rule-making under §§ 551 and 553 rather than under §§ 556 and 557. For the same reason, we find the substantial evidence test[4] to be inapplicable. Automobile Parts & Accessories v. Boyd, *supra*, at 337–338.[5] As Congress did not specifically provide for "substantial evidence" review (as in the Federal Aviation Act, 49 U.S.C. § 1486, which we

---

2. The standard is prefaced by findings that it,
 (a) Is needed for mattresses to protect the public against unreasonable risk of the occurrence of fire arising from such hazards as continuous slow burning or smoldering and the resultant production of smoke or toxic atmospheres leading to death, personal injury, or significant property damage;
 (b) Is reasonable, technologically practicable, and appropriate, and is stated in objective terms; and
 (c) Is limited to mattresses which have been determined to present such unreasonable risk.

3. Procedural and appeal provisions in the Act are substantially similar to those in the National Traffic and Motor Vehicle Safety Act of 1966, where a similar problem of review standard exists. HR Report No. 972, 90th Cong. 1st Session (1967). Automobile Parts & Accessories v. Boyd, 132 U.S.App.D.C. 200, 407 F.2d

330 (1968). Cf. Chrysler Corporation v. Department of Transportation, 472 F.2d 659 (6th Cir. 1972). As was true of the Motor Vehicle Act, the legislative history indicates belief by some legislators that "substantial evidence" review applies. Sen. Report No. 407, 90th Cong., 1st Session (1967).

4. 5 U.S.C. § 706(2)(E) provides for setting aside agency action found to be "unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency *hearing provided by statute;* . . ." (Emphasis supplied.) Neither condition applies.

5. Accord, Boating Industry Ass'n v. Boyd, 409 F.2d 408, 411 (7th Cir. 1969). *See also* Citizens Band Ass'n v. United States, 375 F.2d 43, 53–54 (9th Cir. 1967), cert. denied, 389 U.S. 844, 88 S.Ct. 96, 19 L. Ed.2d 112 (1967). Contra, Chrysler Corporation v. Department of Transportation, *supra*, n. 3.

considered in Law Motor Freight, Inc. v. C. A. B., 364 F.2d 139 (1st Cir. 1966), cert. denied, 387 U.S. 905, 87 S.Ct. 1683, 18 L.Ed.2d 622 (1967)), and the Secretary has not conducted a hearing, we do not feel at liberty to extend the language of 5 U.S.C. § 706(2)(E).

■ Nonetheless, under the applicable other clauses of § 706(2), we must examine the standard in light of the criteria established in the Act. *See supra* note 1. The Secretary's obligation to make findings, based on investigation and research, that satisfy those criteria leads us to a standard of review that may differ little, if at all, from the standard normally used in substantial evidence review.[6] Our focus will be on the reasonableness of the conclusions drawn from the evidence before the Secretary, including the adequacy of the Secretary's responses to objections raised by participants in the rulemaking process. See Automobile Parts & Accessories v. Boyd, *supra*, 407 F.2d at 338, 341.

Of petitioner's three contentions, we find troublesome only the second—that the record does not support inclusion of crib mattresses within the standard adopted as generally applicable to all mattresses.

■ On the first point, the record adequately demonstrates the need to protect the public against unreasonable risk of fire hazard from mattresses including crib mattresses. Twenty-three case studies show that fires may originate in, or spread to, crib or undersized mattresses, just as they do in adult mattresses. The Secretary could infer, from cases in the record and as a matter of common knowledge, that infants are particularly helpless to escape from fires in the mattresses where they lie.[7]

■ We find equally unpersuasive petitioner's third argument that the Secretary's finding of technological practicability was unsupported. The Secretary's finding was based on a consultant's study, presumably limited to adult mattresses, that the modifications needed for compliance with the standard would increase the retail price of a mattress from $39.95 to $49.95. We think the Secretary could infer that modification of crib mattresses would cause cost increases of no greater scale. At least he could do so in the absence of contrary evidence from the crib mattress manufacturers. Petitioner and those similarly situated had the facts in their possession to contest the finding of technological feasibility when first proposed. They did not do so. Indeed, they did not raise the point at all in their one communication to the Secretary during the rule making. See Unemployment Commission v. Aragon, 329 U.S. 143, 155, 67 S.Ct. 245, 91 L.Ed. 136 (1946). They had the burden of going forward with evidence uniquely in their knowledge. N.L.R.B. v. Mastro Plastics Corp., 354 F.2d 170, 176 (2d Cir. 1965), cert. denied, 384 U.S. 972, 86 S.Ct. 1862, 16 L.Ed.2d 682 (1966).

■ Petitioner's remaining point is that the standard was not shown to be applicable to crib mattresses—the nature of the test and the Secretary's statement of intent[8] both focusing on the cigarette-fire hazard.

---

6. Under the substantial evidence test, a court must ask whether the evidence before the agency was such " 'as a reasonable mind might accept as adequate to support a conclusion.' " Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966).

7. One case reported in the record is of an eighteen month old baby who died of smoke inhalation when a broken electrical cord ignited his crib mattress. "The baby was sleeping on his right side with his back to the approaching fire. When the fire reached the boy it set his backside on fire and he probably rolled on his stomach . . . He might then have tried to get to his knees (the position in which he died) in an endeavor to get out of the crib."

8. In promulgating the standard the Secretary said:
*Intent of the standard.* Research and data indicate that the cigarette is the principal ignition source of mattress

However, while the reason for a cigarette flammability test was data that cigarettes were the principal ignition source, we think the record provides a reasonable basis for including crib mattresses.

■ First, the Secretary could infer, as he expressly did, that parents frequently smoke and "the accidental dropping of a lighted cigarette on these mattresses while attending to a child is a distinct possibility." Whether the test is "arbitrary, capricious" or "substantial evidence", agencies are not precluded from drawing reasonable inferences from facts commonly known.

Second, both from test results mentioned in the record [9] and common sense it could be inferred that the cigarette test would serve appreciably as a test of general flammability, affording protection against many mattress fires whatever their source. We are not required to overlook this rather obvious inference in determining the reasonableness of the Secretary's findings, since while his "Intent of Standard" refers to the cigarette hazard, his findings define the hazard more generally as the "unreasonable risk of fire arising from such hazards as slow burning or smoldering. . . . " Cf. Burlington Truck Lines v. United States, 371 U.S. 156, 168, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962): That cigarettes were the principal source of risk does not demonstrate that the Secretary was not properly concerned about other dangerous sources, such as electrical cords, hot light bulbs, etc., and could not conclude that mattresses passing the cigarette test would be generally less vulnerable to ignition.

Third, in declining to exclude crib mattresses, the Secretary could consider

—at least in the absence of any information from the industry showing that the cigarette test was peculiarly inappropriate—the desirability of adopting a single, uniform standard applying to mattresses generally. Not only might it seem patently objectionable to deny to helpless infants the same standard of safety afforded to adults within the same household, there also could be reasons of economy and administrative convenience for applying a single test to a generic product.

■ Finally, the Secretary could take account of the crib manufacturers' failure to present any evidence warranting exclusion. The burden to justify inclusion of a product within a general safety standard is initially upon the Secretary. But at some point—reached, we think, here—the burden shifts to those seeking exclusion to come forward with their own evidence. If they do so, the Secretary may then have to develop further evidence in response—or otherwise risk our determination that inclusion is unsupported. The Secretary's initial burden, however, is not limitless—especially when dealing with inclusion of a product falling within a common product-line, as to the latter of which there is extensive evidence supporting application of the standard. If from what is before him, he plausibly opts for inclusion of a particular product, it is not unreasonable to require affected manufacturers to point out with particularity those features which make special treatment necessary. Here nothing was presented, beyond the cryptic assertion that infants do not smoke.

Petition to set aside flammability standard is denied.

fires. Mattresses may be produced currently which do not protect the public against the unreasonable risk of the occurrence of mattress fires ignited by cigarettes. This standard will provide protection to the public in that mattresses which are produced after the effective date of the standard will not sustain ignition from burning cigarettes. The National Fire Protection Association has reported that burning cigarettes are one of the largest causes of single fatality fires involving bedding. 37 Fed.Reg. at 11363.

9. In a departmental report it was stated that "with some mattress constructions, the cigarette test is a more severe test than that of an open flame ignition system."