**CONSUMERS UNION OF UNITED STATES, INC., Petitioner,**

v.

**CONSUMER PRODUCT SAFETY COMMISSION, Respondent.**

No. 161, Docket 73–1617.

United States Court of Appeals, Second Circuit.

Argued Nov. 30, 1973.

Decided Jan. 4, 1974.

Marsha N. Cohen, Washington, D. C.
(Peter H. Schuck, Washington, D. C., on
the brief), for petitioner.

Thomas S. Brett, Atty., Dept. of Jus-
tice, Washington, D. C. (Thomas E.
Kauper, Asst. Atty. Gen., Gregory B.
Hovendon, Atty., Dept. of Justice; Mi-
chael A. Brown, Acting Gen. Counsel,
Paul W. Hallman, Counsel, Consumer
Product Safety Commission, Washing-
ton, D. C., on the brief), for respondent.

Before MOORE, HAYS and TIM-
BERS, Circuit Judges.

TIMBERS, Circuit Judge:

■ The sole issue before us on this
petition to review portions of regula-
tions of the Food and Drug Administra-
tion, 21 C.F.R. §§ 191b.5(e), 191b.-
3(e)(2) and 191b.7 (1973), establishing
standards for electrically operated toys
and other electrically operated articles
intended for use by children is whether
the determination by the Commissioner
of Food and Drugs in promulgating the
regulations was "arbitrary, capricious,
an abuse of discretion, or otherwise not
in accordance with law". 5 U.S.C. § 706
(2)(A) (1970). We hold it was not.
We deny the petition to review.

On January 13, 1972, the Commission-
er proposed, and later published in the
Federal Register, certain regulations of
the FDA designed to ban electrically op-
erated toys or other electrically operated
articles intended for use by children
which failed to meet certain prescribed
labeling, design, construction and per-
formance standards. 37 Fed.Reg. 1020–

27 (January 21, 1972). The regulations
were proposed to implement the Federal
Hazardous Substances Act of 1960, as
amended by the Child Protection and
Toy Safety Act of 1969, 15 U.S.C.
§§ 1261–74 (1970), and pursuant to pow-
ers delegated by the Secretary of HEW
to the Commissioner by 21 C.F.R. § 2.-
120(a)(1) (1973).[1]

Consideration of the proposed regula-
tions followed standard rule making pro-
cedure prescribed by the Administrative
Procedure Act, 5 U.S.C. § 553 (1970),
including requirements as to notice and
public participation. Among the forty-
five comments received in response to
the Commissioner's invitation was a two
page letter of comment submitted by the
petitioner herein on February 24, 1972.
After due consideration, the Commis-
sioner concluded that the regulations
should be adopted. Accordingly, they
were promulgated on March 2, 1973, to
become effective September 3, 1973. 38
Fed.Reg. 6141–48 (March 7, 1973).

Having failed to persuade the Com-
missioner to incorporate in the regula-
tions as promulgated those modifications
suggested in its letter of comment, peti-
tioner filed its petition to review in our
Court on April 27, 1973. Essentially pe-
titioner claims that the agency action
here under review, 21 C.F.R. §§ 191b.-
5(e), 191b.3(e)(2) and 191b.7 (1973),
was arbitrary and capricious within the
meaning of 5 U.S.C. § 706(2)(A) (1970)
because the Commissioner (1) failed to
require double insulation or grounding
on toys with high shock risk, (2) chose
maximum acceptable surface tempera-
tures for electrically operated toys, and
(3) relied upon cautionary labeling to
protect children from thermal hazards
—all without full consideration of cru-
cial safety issues and without any ap-

---

1. Pursuant to the Consumer Product Safety
Act, 15 U.S.C. § 2079(a) (1970), the func-
tions of the Secretary of HEW (and
through him, the functions of the Commis-
sioner) under the Federal Hazardous Sub-
stances Act were transferred on May 14,
1973 to the Consumer Product Safety Com-
mission. The latter was substituted for

the FDA as respondent herein on June 11,
1973.
   Since the regulations here involved were
proposed and promulgated by the FDA, the
parties in their briefs and arguments have
referred to the FDA, rather than the Com-
mission, as the respondent. We do likewise.

parent rational basis for his determination. We disagree.

■ Here, under the "arbitrary, capricious" standard, our scope of review is even narrower than it was in Scenic Hudson Preservation Conference v. FPC *(Scenic Hudson II)*, 453 F.2d 463 (2 Cir. 1971), cert. denied, 407 U.S. 926 (1972), where the statutory standard was "substantial evidence". Under either standard, at a minimum, an agency must exercise its jurisdiction where it properly lies. It must not ignore evidence placed before it by interested parties. See *Scenic Hudson II, supra,* 453 F.2d at 467–68.

Petitioner here does not claim that respondent failed to exercise its jurisdiction. It does claim that the FDA failed even to consider its position—especially its position with regard to grounding. This claim is belied by petitioner's letter of comment, by the fact that the Commissioner specifically rejected other suggestions of petitioner, and by the fact that the Commissioner incorporated in the final regulations suggestions of ten others who submitted comments.

■ *Scenic Hudson II* also held that there must be a reasoned basis for agency action. However, a formal opinion specifically covering all rejected alternatives is not required in an informal rule making proceeding.

■ Petitioners challenge the sufficiency of the factual record. The record need not be as complete under the "arbitrary, capricious" standard as under the "substantial evidence" standard. Thus, in the present case, it is sufficient that the regulations be supported by evidence in the Commission's files, or even by its experience. The record clearly establishes that there was sufficient evidence to support the regulations in the three respects challenged by petitioner:

(1) The record supports the Commission's choice of a generalized electric shock standard, rather than one of the two shock-minimization strategies favored by petitioner. There was evidence that grounding is not effective because of the small number of households wired for three-prong plugs. The evidence in favor of rejecting double insulation was more tenuous, but the FDA could have concluded that the general standard is more desirable because it gives the manufacturer a wider choice of cost options.

(2) There was a wealth of evidence supporting the chosen maximum surface temperature levels, assuming an "irreversible tissue damage" standard. From the relatively small number of pain-related injuries, and from its own experience, the FDA could have concluded that tissue damage was the appropriate standard.

(3) The child developmental information, and the letter from the Director of the Poison Control Center, provided a sufficient basis for the decision to rely on labeling for toys used by children older than eight years of age.

In short, our careful examination of the record satisfies us that the regulations were promulgated on the basis of an adequate administrative record indicating that the Commissioner fairly considered, among other things, pertinent aspects of electrical shock hazards, thermal injury hazards and cautionary labeling. The claims asserted by petitioner do not warrant our interfering with a presumably expert agency's exercise of its rule making discretion. Congress gave the job of regulating toy manufacturers to the Secretary of HEW and more recently to the Consumer Products Safety Commission, not to us. We have no special expertise in the complexities of child development.

Petition denied.