COSMETIC, TOILETRY AND FRA-GRANCE ASSOCIATION, INC., Plaintiff,

v.

Alexander SCHMIDT, Commissioner, Food and Drug Administration,

and

Food and Drug Administration, Defendants.

Civ. A. No. 75–1715.

United States District Court, District of Columbia.

Feb. 3, 1976.

58

Eugene I. Lambert, Robert M. Sussman, Washington, D. C., for plaintiff.

Earl J. Silbert, U. S. Atty., Robert N. Ford, Patricia Frohman, Asst. U. S. Attys., Edward B. Craig IV, Dept. of Justice, Washington, D. C., for defendants;

Richard A. Merrill, Chief Counsel, Barry Blyveis, Trial Atty., Food and Drug Administration, Rockville, Md., of counsel.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

This case comes before the Court on the parties' cross motions for summary judgment. Plaintiff, a non-profit association whose members include nearly two hundred manufacturers and distributors of cosmetic products, asks this Court to declare invalid certain regulations promulgated by the defendant Food and Drug Administration on the ground that the regulations are arbitrary and capricious. The court has jurisdiction over the present matter pursuant to the jurisdictional provisions of the Administrative Procedure Act (APA), 5 U.S.C. §§ 702–706, which provide a right of review to persons aggrieved by final agency action. Both parties agree that all available administrative remedies with respect to the Food and Drug Administration's final regulations have been exhausted.

The regulations in question require that the following warning appear on the labels of all aerosolized food, drug, and cosmetic products:

21 C.F.R. § 740.11(a)

*Warning*—Avoid spraying in eyes. Contents under pressure. Do not puncture or incinerate. Do not store at temperatures above 120°F. Keep out of reach of children.

In addition, the regulations require that the following warning appear on the labels of all aerosolized food, drug, and cosmetic products which contain halocarbon or hydrocarbon propellants:

21 C.F.R. § 740.11(b)

*Warning*—Use only as directed. Intentional misuse by deliberately concentrating and inhaling the contents can be harmful or fatal.

The regulations will become effective May 31, 1976.

The administrative history of this case spans nearly three years. On March 7, 1973, the Commissioner of Food and Drugs published notice of proposed rulemaking in the Federal Register (38 Fed. Reg. 6191) and invited public comment thereon, pursuant to 5 U.S.C. § 553. On May 7, 1973, Cosmetic Toiletry and Fragrance Association, Inc. (CTFA), the plaintiff herein, filed a letter of comment on the proposed rules. CTFA maintained essentially, that the defendants' regulations were arbitrary and capricious in that the regulations failed to reflect a consideration of the specific nature of aerosol fragrances which, CTFA alleged, had no history of abuse. Final regulations were promulgated on March 3, 1975, and published at 40 Fed.Reg. 8912–8917. On June 23, 1975, representatives of CTFA met with representatives of the Food and Drugs Administration to discuss further objections to the final regulations. Defendants recommended that plaintiff file a petition for reconsideration. On June 27, 1975, defendants received CTFA's petition for reconsideration, or in the alternative, to amend the regulation. In a three-page letter dated August 4, 1975, defendants denied CTFA's petition for reconsideration.

The issues presented for review concern whether, in promulgating the regulations, the agency acted in an "arbitrary and capricious" manner, 5 U.S.C. § 706(2)(A). Plaintiffs also contend that the Commissioner's requirement that all warning statements appear on the product "label" as opposed to anywhere on the product "labeling",[1] see 21 C.F.R. §§ 740.2, 740.11, is (a) beyond the statutory authority of the Commissioner, and (b) represents a clear error of judgment on the part of the Commissioner. For the reasons discussed below, the Court finds that the defendants' regulations were not promulgated in an arbitrary and capricious manner in that there is ample evidence in the administrative

---

1. See part III, *infra*. "Labeling" includes any written, printed, or graphic matter appearing anywhere on the product, including the product's packaging. "Label" refers to the written matter on the immediate product. 21 U.S.C. §§ 321(k), (m).

record to support the Commissioner's assertion as to the need for the warning requirements of 21 C.F.R. §§ 740.11(a) and (b). In addition, the Court finds that the Commissioner had the statutory authority to require that the warnings appear on the product label, and that the record reveals that said requirement was not a clear error of judgment. Plaintiff's motion for summary judgment is denied and defendants' motion for summary judgment is hereby granted.

## I. In Reviewing Informal Rulemaking, this Court Must Apply the "Arbitrary and Capricious" Standard.

As an initial matter, the Court notes that while the parties agree that the "arbitrary and capricious" standard should be applied in reviewing the defendants' informal rulemaking in the instant case,[2] see 5 U.S.C. § 706(2)(A), they differ as to the meaning of that standard. In the case of *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), Mr. Justice Marshall, for the Court, addressed this very issue:

> To make this finding [under § 706 (2)(A)], the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency. 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971) (citations omitted).

See also *National Nutritional Foods Ass'n v. Weinberger*, 512 F.2d 688, 700–

01 (2d Cir. 1975), (clarifying the *Overton Park* standard and applying it to an informal rulemaking proceeding); *Weinberger v. Hynson, Westcott & Dunning, Inc.*, 412 U.S. 609, 622, 93 S.Ct. 2469, 37 L.Ed.2d 207 n.19 (1973). The court of appeals for this circuit has also addressed the meaning of "arbitrary and capricious." For example, in *Automotive Parts and Accessories Ass'n v. Boyd*, 132 U.S.App.D.C. 200, 407 F.2d 330 (1968), Judge McGowan, for the court, held that the "paramount objective [in judicial review of the informal rulemaking procedure] is to see whether the agency, given an essentially legislative task to perform, has carried it out in a manner calculated to negate the dangers of arbitrariness and irrationality in the formulation of rules for general application in the future." 407 F.2d at 338. In this connection, according to Judge McGowan, "Our function is to see only that the result is reasonable and within the range of authority conveyed, that it has been formulated in the manner prescribed, and that the disappointed have had the opportunity provided by Congress to try to make their views prevail." 407 F.2d at 343. See also *Camp v. Pitts*, 411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973), and *Consumer Union of United States, Inc. v. Consumer Product Safety Commission*, 491 F.2d 810 (2d Cir. 1974).[3]

## II. Defendants' Regulations were not Promulgated in an Arbitrary or Capricious Manner.

Section 701(a) of the Food, Drug, and Cosmetic Act, 21 U.S.C. § 371(a), authorizes the Secretary of Health, Education,

---

**2.** Plaintiffs did not request a hearing, which if granted, would have entitled them to a determination as to whether there was "substantial evidence" to support the agency's finding. 5 U.S.C. § 706(2)(E).

**3.** Plaintiffs cite *Environmental Defense Fund v. Ruckelshaus*, 142 U.S.App.D.C. 74, 439 F.2d 584 (1971) as authority for the standards by which agency action should be reviewed. However, that case did not involve informal

rulemaking, but rather a cancellation of a pesticide under regulations unique to the Environmental Protection Agency. The standard imposed by the court of appeals in that case was a standard approaching the substantial evidence test, and representative of the trend toward greater supervision of the agencies in environmental cases. Leventhal, *Environmental Decisionmaking and the Role of the Courts*, 122 U.Penn.L.Rev. 509, 512 (1974).

and Welfare to promulgate regulations for the efficient enforcement of the Act. This power has been delegated to the Commissioner of Food and Drugs. 21 C.F.R. § 2.120(a)(1). Section 201(n) of the Act, 21 U.S.C. § 321(n), provides that the Commissioner may promulgate regulations when an article is alleged to be misbranded because the labeling is false or misleading. The regulations at issue in the instant case were promulgated pursuant to section 201(n).

CTFA alleges that under section 201(n), defendants can only require warnings to cure misbranded products if they show that: (1) those products present the hazards toward which the warnings are directed; and (2) such hazards exist under the customary and usual conditions of use of those products. With respect to the "intentional misuse" warning, 21 C.F.R. § 740.11(b), plaintiff's major contention is that the Commissioner did not, as required, make a determination that the hazards presented by the customary and usual use of aerosol food, drugs, and cosmetics in general existed for aerosol fragrances as well. With respect to the "general" warning, 21 C.F.R. § 740.11(a), plaintiff's major contention is that there is not sufficient evidence in the administrative record to identify the alleged hazards and thereby justify the warning. The Court disagrees with both of plaintiff's contentions.

A. *The "intentional misuse" warning*:

 As a threshold matter, the Court notes that it was not necessary, in the context of this case, for the Commissioner to make an individualized determination that the general hazard—intentional misuse of aerosol products—existed as to plaintiff's sub-category, aerosol fragrances. The Commissioner's authority to promulgate regulations in the public interest for an entire category of products rather than on a case-by-case basis is unquestioned. *National Nutritional Foods Ass'n v. Weinberger*, 512 F.2d 688, 696–97 (2d Cir. 1975). *See also*

*Weinberger v. Hynson, Westcott & Dunning, Inc.*, 412 U.S. 609, 621, 93 S.Ct. 2469, 37 L.Ed.2d 207; *Weinberger v. Bentex Pharmaceuticals, Inc.*, 412 U.S. 645, 653, 93 S.Ct. 2488, 37 L.Ed.2d 235 (1973). Thus, at the outset, the Commissioner was responsible only for justifying the need for administrative action taken as to the general category of products. In the instant case, the administrative record is replete with findings which substantiate the dangers inherent in aerosolized products and thereby bear out the need for the warning in question. See 40 Fed.Reg. 8916–17 (1975).

Once the Commissioner established a general justification for the warning affecting the category of aerosol products, the burden fell upon plaintiff or other complaining parties to demonstrate that the sub-category of aerosol fragrances should not have been subject to the intentional misuse warning. *Bunny Bear, Inc. v. Peterson*, 473 F.2d 1002 (1st Cir. 1973). In *Bunny Bear, supra*, petitioner requested that its product, crib mattresses, be excluded from regulations issued under the Flammable Fabrics Act, 15 U.S.C. §§ 1191–1202, which were applicable to the general category of mattresses. The Court held that:

"[T]he Secretary could take account of the crib manufacturers' failure to present any evidence warranting exclusion. The burden to justify inclusion of a product within a general safety standard is initially upon the Secretary. But at some point . . . the burden shifts to those seeking exclusion to come forward with their own evidence. . . . The Secretary's initial burden . . . is not limitless—especially when dealing with inclusion of a product falling within a common product-line . . . of which there is extensive evidence supporting application of the standard." 473 F.2d at 1007.

The principles of *Bunny Bear, supra*, are directly applicable to the instant case. The "evidence" which was brought to the Commissioner's attention to justify the assertion that aerosol fragrances

62

should not be included within the scope of the warning consisted, essentially, of: a) an informal poll of CTFA's members showing that there is no history of abuse of aerosol fragrance products; and b) claims that aerosol fragrances are inherently not subject to abuse because of their penetrating odor, customary use in the facial area, high cost, and low propellant content. The Commissioner found, and this Court agrees, that "inadequate data and information were presented to justify a conclusion that products should be excluded from the warning statement requirement . . . ." 40 Fed.Reg. 8914 (1975). The evidence presented by the plaintiff was not of the weighty and substantial sort as to justify consideration of the plaintiff's product on an individual basis. *See Bradley v. Weinberger,* 483 F.2d 410 (1st Cir. 1973). Rather, it more closely resembled the insufficient and "cryptic assertion," by the petitioner in *Bunny Bear, supra,* "that infants do not smoke." 473 F.2d at 1007.

Accordingly, the Court concludes that plaintiff did not sustain its burden on the administrative level to present substantial evidence which would call for an individual determination of whether its product should be excluded from the scope of the regulations.

■ But, even assuming *arguendo* that the interests represented by plaintiff were entitled to an individualized determination, the record reveals that the Commissioner spoke directly to most of the contentions raised by plaintiff and other complaining parties. After concluding, as pointed out above, that "inadequate data and information were presented to justify a conclusion that products should be excluded from the warning statement requirement solely for reasons of penetrating odor, low pressure, purchase price, or because the product is intended for use on or about the face, or is actually intended for inhalation," the Commissioner went on to note that, in any case:

"A product with a penetrating odor, for example, may be misused by actuating the container in an upside down

position, which would allow only the propellant to escape and hence remove or greatly reduce the objectionable odor. There is no reason why products intended for use on or around the face, or those intended for inhalation, may not be misused intentionally and should therefore not be labeled accordingly. The warning statement does not speak against incidental inhalation or deliberate inhalation as directed. Its purpose is to warn against intentional misuse and to inform the consumer of the possible consequences resulting from such misuse." 40 Fed. Reg. 8914, ¶ 6.

Moreover, in response to a variety of comments to the effect that certain subcategory products should be excluded from the warning requirement because of low propellant content and/or no substantial likelihood that the product container would allow for sufficient access to release harmful quantities of propellant, the Commissioner excluded a number of sub-category products with the requisite characteristics. See 40 Fed. Reg. 8914, ¶ 6. Thus, the assertion that the Commissioner ignored substantive comments is, in the context of this case, "belied by . . . the fact that the Commissioner . . . incorporated in the final regulations suggestions of . . . others who submitted comments." Finally, while there must be a "reasoned basis for agency action," informal rule-making does not require "a formal opinion specifically covering all rejected alternatives." *Consumers Union of United States, Inc. v. Consumer Product Safety Commission,* 491 F.2d 810, 812 (2d Cir. 1974). The Court concludes that there was more than a reasoned basis for applying the intentional misuse warning to all aerosol food, drug, and cosmetic products in the instant case, and that the Commissioner's action was not "arbitrary and capricious" within the meaning of that term as discussed in part I, *infra.*

B. *The "general" warning:*

■ CTFA objected to the general warning statement for self-pressurized

containers, 21 C.F.R. § 740.11(a). However, this Court finds that the administrative record as well as the Commissioner's "purpose and basis" clause set forth a rational basis for the Commissioner's findings.

The gist of plaintiff's comments are addressed to the Commissioner's failure to demonstrate the hazards inherent in cosmetic fragrances. However, once defendant demonstrated a general justification for the warning to prevent the hazards of customary or usual use of aerosolized food, drugs, and cosmetics, it was unnecessary for the Commissioner to make an individualized determination as to aerosolized fragrances.[4] And, it is clear from the administrative record that the general hazards were identified by the Commissioner. For example, in the "Report of the Committee on Aerosol Toxicity,"[5] a part of the record in this case, it was pointed out that "one obvious hazard of a pressurized container is explosion. This hazard is compounded by heat. Thus the basic warning is directed against puncturing the container, storing in excessive heat and disposal by burning."[6] With reference to the clause "Avoid spraying in eyes," the Committee reported that "eyes and mucous membranes may be damaged if the spray is directed towards them at close range."[7] The administrative record also contains various other references to the hazards against which the warning is directed.[8]

In fact, the contention that aerosol food, drugs, and cosmetics do present a hazard seems to have been "given" in the context of the administrative record. Thus, even plaintiff's objections focused not on the need for the general warning, but rather on how the warning should be applied. In this vein, the plaintiff submitted extensive comments in a letter dated May 7, 1973, indicating its preferences for the wording of the warning. In response, the Commissioner proved amenable to amending the proposed regulations. Specifically, plaintiff suggested that the warning against spraying in the eyes would not be appropriate for products not expelled in spray form; 21 C.F.R. § 740.11(a)(4) allows manufacturers to delete the clause "Avoid spraying in eyes" if the product is not expelled as a spray.[9] Plaintiff also commented that the clause "Keep out of reach of children" was inappropriate for cosmetics intended for use by children. 21 C.F.R. § 740.11(a)(2) was amended in response to plaintiff's comment to include the phrase "except under adult supervision."[10] Finally, pursuant to yet another of plaintiff's suggestions, the Commissioner ruled that in the case of products manufactured in glass containers, the word "break" can be substituted for the word "puncture."[11]

It is the opinion of this Court that the foregoing more than adequately illustrates both the Commissioner's good faith consideration of plaintiff's comments and the reasonable and non-arbitrary manner in which the regulations,

4. See part II A, *supra,* for a discussion of plaintiff's burden of proof.

5. Report of the [FDA] Committee on Aerosol Toxicity, p. 36, Dkt. Entry 33, Certified Record.

6. The Commissioner pointed out that "the purpose of the warning is to alert the consumer not to store self-pressurized products at temperatures considerably above room temperature because of the danger of bursting. . . . The advantage of greater consumer awareness outweighs any consideration of permitting use of various higher temperatures." 40 Fed.Reg. 8915, ¶ 10.

7. *Id.* See also Dkt. Entry 8, consisting of comments from the Center for Science in the Public Interest, identifying the major concern with aerosols as the problem of spraying around the face, and making particular reference to perfume products; and Dkt. Entry 32.

8. With respect to the hazards of incineration, see Dkt. Entry 32. With respect to the warning for the protection of children, see Dkt. Entry 32. The hazards against puncturing are graphically illustrated in an undated letter to Congressman McCloskey from Dorothy Vaughan, Dkt. Entry 26.

9. See also 40 Fed.Reg. 8916, ¶ 11.

10. *Id.* at 8915, ¶ 8.

11. *Id.* at 8915, ¶ 10; 21 C.F.R. § 740.11(a)(3).

**64**

supported by the administrative record, were promulgated.

III. *The Commissioner had the Statutory Authority to Require that the Warnings in Question Appear on the Product Label, and his Decision to so Require was not a Clear Error of Judgment.*

■ Sections 602(a) and 201(n) of the Food, Drug, and Cosmetic Act, 21 U.S.C. § 362(a) and 21 U.S.C. § 321(n) provide that a product shall be deemed misbranded if its "labeling" appears false or misleading in any particular. Pursuant to his broad statutory powers to promulgate regulations for the efficient enforcement of the Act, 21 U.S.C. § 371(a), the Commissioner, in promulgating the regulations at issue, has required that the warning statements appear on the immediate label of the product rather than anywhere on the product's packaging. Plaintiff contends that the Commissioner's authority extends only to correcting misbranded "labeling" (i. e. packaging) and, therefore, that the requirement that warnings appear on the immediate label is not within the scope of the Commissioner's statutory powers.

Plaintiff's interpretation of the word "labeling" within the context of 21 U.S.C. §§ 321(k) and (m) is too restrictive. 21 U.S.C. § 321(k) provides:

"The term 'label' means a display of written, printed, or graphic matter upon the immediate container of any article; and a requirement made by or under authority of this chapter that any word, statement, or other information appearing on the label shall not be considered to be complied with unless such word, statement, or other

information also appears on the outside container or wrapper, if any there be, of the retail package of such article, or is easily legible through the outside container or wrapper."

21 U.S.C. § 321(m) provides:

"The term 'labeling' means *all labels* and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article." (emphasis supplied).

Thus, it is clear to this Court that the term "labeling" includes "labels" and, to correct any misbranding, the Commissioner has the authority to require that the warnings appear on the immediate label of the product. Such an interpretation is consistent with the Commissioner's statutory mandate to promulgate regulations for the efficient enforcement of the Act. The Supreme Court has indicated that "when faced with a problem of statutory construction, this Court shows great deference to the interpretation given the statute by the officers or agency charged with its administration." *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965).[12]

Plaintiffs also contend that, even if the Commissioner had the statutory authority to require that the warnings appear on the product label, his decision to that effect was a clear error of judgment and therefore arbitrary and capricious. This Court finds, however, that the Commissioner's decision was supported by the record.

■■ Plaintiff's major contentions in this area, as expressed to the Commissioner in a letter dated June 27, 1975, which is a part of the administrative record,[13] are that the Commissioner's de-

---

12. See also, *National Petroleum Refiners Ass'n v. F. T. C.,* 157 U.S.App.D.C. 83, 482 F.2d 672 (1973): "In determining the legislative intent, our duty is to favor an interpretation which would render the statutory design effective in terms of the policies behind its enactment and to avoid an interpretation which would make such policies more difficult of fulfillment, particularly where . . . that interpretation is consistent with the plain language of the statute." 482 F.2d at 689.

13. Defendants contend that the plaintiff is too late in raising its objections to the labeling requirement because this issue was not raised in plaintiff's comments to the proposed rulemaking. On June 27, 1975, plaintiff filed its petition for reconsideration, Dkt. Entry 75N-0130/PRC, in which it first raised the issue of the hardships involved in redesigning product labels and asserted that such a requirement constituted a clear error of judgment on the part of the Commissioner. Although the peti-

cision to require warnings to appear on the labels, as opposed to a decision requiring a "hangtag" on the packaging, will cause the fragrance industry severe economic burden and will lead to the destruction of the aesthetic value of the industry's product packaging (which consumers have come to recognize). In responding to the plaintiff's contentions, the Commissioner wrote that "the reasonableness of this requirement is apparent from the nature of the warning. Part of the required warning relates to the proper storage of these products; it is obviously appropriate that such storage warnings be available throughout the full period of use of the product." [14] As to the aesthetics of the container, the Commissioner's response was that such concerns were outweighed by considerations of public health.

IV. *Conclusion.*

The Court finds that defendant's regulations were properly promulgated under the Commissioner's authority pursuant to 21 U.S.C. § 371(a). The Court further finds that the regulations are neither arbitrary nor capricious. Therefore, the plaintiff's motion for summary judgment is denied and defendant's motion for summary judgment is hereby granted in accordance with the findings of fact and conclusions of law set forth herein and the order entered of even date herewith.

tion was filed long after the final rules were promulgated, this Court is reluctant to allow such lateness to work as an estoppel on plaintiff in this case because defendants were aware of this objection before the case was presented for judicial review and, in fact, responded in detail to plaintiff's contentions. Both plaintiff's petition and defendants' response thereto are a part of the administrative record. See note 14, *infra.*

14. Commissioner's letter of August 4, 1975, p. 2, Dkt. Entry 75N–0130/PDN. The Commis-

sioner went on to say: "Similarly, part of the required warnings relates to proper disposal of the container; it is entirely reasonable to require that disposal warnings be available at the time the product is discarded. Such availability would not exist if the warning were included only in labeling discarded at the time of purchase. . . . [A]ny misuse is likely to be made by someone who did not purchase the product but who uses it because it is available in the household. In such circumstances, the only effective warning is one on the label."