671 F.2d 528
 217 U.S.App.D.C. 22
 NATIONAL TOUR BROKERS ASSOCIATION, Petitioner,
v.
INTERSTATE COMMERCE COMMISSION and United States of America,
Respondents,
High Adventure Tours, Inc., Campus Travel, Inc., et al.,
American Bus Association, Intervenors.
 No. 80-1037.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Feb. 4, 1981.
Decided Jan. 15, 1982.
 
 Petition for Review of an Order of the Interstate Commerce commission.
 David I. Granger, Washington, D. C., with whom Harold D. Murry, Jr., and J. Griffin Lesher, Washington, D. C., were on the brief for petitioner.
 Evelyn G. Kitay, Atty., I. C. C., Washington, D. C., with whom Richard A. Allen, Gen. Counsel, Frederick W. Read, III, Associate Gen. Counsel, I. C. C., Sanford M. Litvack, Asst. Atty. Gen., Robert B. Nicholson and Marion Jetton, Attys., Dept. of Justice, Washington, D. C., were on the brief for respondents.
 James H. Glavin, III, was on brief for intervenor, High Adventure Tours, Inc.
 Robert E. Goldstein was on brief for intervenors, Campus Travel, Inc., et al.
 Charles A. Webb, Washington, D. C., was on brief for intervenor, The American Bus Assn.
 Before JOHN W. PECK*, Senior Circuit Judge for the Sixth Circuit, WILKEY and GINSBURG, Circuit Judges.
 Opinion for the Court filed by Senior Circuit Judge JOHN W. PECK.
 JOHN W. PECK, Senior Circuit Judge.
 
 
 1
 The national trade association for the motor carrier passenger broker industry, the National Tour Brokers Association (NTBA), brought this action for review of the Decision and Adopted Rules of the Interstate Commerce Commission (ICC) in Ex Parte No. MC-96 (Sub-No. 2), Passenger Broker Entry Control, served December 7, 1979.[1] The challenged rules simplify the licensing procedures for passenger tour brokers under 49 U.S.C. § 10924. In effecting this rule change, the ICC has reversed its previous interpretation of the requirements of § 10924. Carla Ticket Service, Inc., Broker Application, 94 M.C.C. 579 (1964). The present petition for review requires this Court to determine whether the ICC's informal rulemaking in this instance was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).
 
 
 2
 49 U.S.C. § 10924 provides that the ICC shall issue a license authorizing a person to be a broker for the transportation of passengers or household goods if the ICC finds:
 
 
 3
 (1) the person is fit, willing, and able-
 
 
 4
 (A) to be a broker for transportation to be authorized by the license; and
 
 
 5
 (B) to comply with this subtitle and regulations of the Commission; and
 
 
 6
 (2) the transportation for which the person is to be a broker will be consistent with the public interest and the transportation policy of section 10101 of this title.
 
 
 7
 As section 10924 was previously administered by the ICC, each applicant for a tour broker license was required to file an application showing that the applicant was fit, willing, and able to perform the proposed service and that the proposed service was consistent with the public interest and the national transportation policy. In Carla Ticket, the ICC rejected the suggestion that § 10924 required individual scrutiny only of the applicants' fitness, and stated that § 10924 reflected Congressional intent that the ICC evaluate the "public interest" of each broker license application on its merits. Carla Ticket, supra, at 580-81. Under this interpretation of § 10924 applications for new broker licenses have been routinely opposed by existing tour brokers on grounds that existing carriers could adequately provide the services proposed by new license applicants and that no public interest would be served by the "needless duplication" of services. See, e.g., Harris Extension-Elkins W. Va., 94 M.C.C. 227 (1963).
 
 
 8
 The rule changes challenged by the NTBA in the present petition were undertaken by the ICC in order to eliminate the case-by-case considerations of public interest under the existing licensing rules. Under the new rules of Ex Parte No. MC-96 (Sub-No. 2), the ICC has substituted a one time "general finding" that tour broker services that otherwise meet licensing requirements are in the public interest. In doing this, the ICC stated that it was not eliminating the public interest test required by § 10924, but rather was altering application procedures to meet the public interest.
 
 
 9
 As previously noted, our review of the ICC's informal rulemaking in Ex Parte No. MC-96 (Sub-No. 2) is governed by Section 10 of the Administrative Procedure Act, which provides that an agency's action, findings, and conclusions shall be set aside if found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The NTBA challenges Ex Parte No. MC-96 (Sub-No. 2) as both violative of the statutory mandate of 49 U.S.C. § 10924 and as arbitrary and capricious because it is unsupported by facts in the administrative record.
 
 I.
 
 10
 NTBA contends that § 10924, by its plain meaning and by the ICC's own previous interpretation of the section, requires the ICC to make individual case-by-case evaluations of both the public interest to be served and the fitness of the applicant for every new broker license application. NTBA argues that Ex Parte No. MC-96 (Sub-No. 2) is violative of § 10924 because it eliminates individual determinations of public interest and in effect declares that henceforth it is in the public interest not to examine the public interest as it relates to individual applications. NTBA argues that this alteration of the requirements of § 10924 can be accomplished only by Congress, and that the ICC's effort in this regard must be set aside as violative of the law.
 
 
 11
 Clearly the rulemaking power of a federal agency does not encompass the power to make law or to repeal law, but rather is the power only to adopt rules that carry out the will of Congress as expressed by statute. Ernst & Ernst v. Hochfelder, 425 U.S. 185, 213-14, 96 S.Ct. 1375, 1391, 47 L.Ed.2d 668 (1976). However, in the absence of a clear indication of a Congressional intent to impose a specific procedure on the ICC in its implementation of its statutory authority, the rules of the Commission are expected to be adaptable to changing circumstances so that Congress' general intent will be effectively promoted. American Trucking Ass'ns, Inc. v. United States, 602 F.2d 444, 449 (D.C.Cir.), cert. denied, 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979). Therefore, the fact that the ICC once interpreted § 10924 to require individual public interest determinations does not bind the ICC to forever adhere to that view. So long as the general finding of public interest proposed by Ex Parte No. MC-96 (Sub-No. 2) is consistent with the mandate of § 10924, then the ICC has the authority to make that general finding regardless of the ICC's prior interpretation as expressed in Carla Ticket. See, e.g., American Trucking Ass'ns, supra, at 449; Bell Telephone Co. v. F.C.C., 503 F.2d 1250, 1264-65 (3rd Cir. 1974).
 
 
 12
 We have examined the language of § 10924 and its legislative history and find nothing that precludes the interpretation now given that section by the ICC in Ex Parte No. MC-96 (Sub-No. 2). Neither the statute nor its legislative history defines "public interest". In the absence of a definition of "public interest" by Congress that would require individual case-by-case determinations, the ICC was within its authority to utilize a general finding that the public interest is served by the licensing of "fit" applicants as brokers. See, e.g., American Trucking Ass'n., supra; Chemical Leaman Tank Lines, Inc. v. United States, 368 F.Supp. 925 (D.Del.1973).[2] Therefore, in our narrow review of Ex Parte No. MC-96 (Sub-No. 2) to determine whether the ICC's informal rulemaking was a violation of 49 U.S.C. § 10924, we conclude that the substitution of a general finding of public interest for the former practice of case-by-case findings was within the ICC's authority and not a violation of law.
 
 
 13
 The NTBA also contends that Ex Parte No. MC-96 (Sub-No. 2) violates § 10924 because the new rule effectively eliminates the "fitness" requirement for tour broker licensing determinations. Under the new rules, applicants for tour broker licenses are required to file "evidence of fitness" to provide the service proposed in the application. This evidence is to consist of statements of who will own and operate the proposed service and a listing of the cities and states in which the proposed service will be conducted. This information is to be published in the Federal Register. In addition, applicants are required by the new rules to post a surety bond of $10,000. New applications are to be granted to first time applicants for a limited duration of three years-renewal subject to review, and licensees are required to notify their passengers that any complaints regarding the service may be submitted in writing to the ICC. These latter two requirements are purported to facilitate "fitness monitoring" by the ICC. Finally, statements supporting the applicants' "good character" are no longer a required part of the tour broker license applications under the new rules.
 
 
 14
 The NTBA contends that these requirements fall short of § 10924's mandate that the ICC issue a broker license upon a finding that the applicant is fit, willing, and able to provide the proposed service and to comply with the Commission's regulations. The NTBA argues that the proposed new "fitness" requirements of Ex Parte No. MC-96 (Sub-No. 2) in fact require no affirmative finding of fitness before a license is granted.
 
 
 15
 We find the NTBA's argument unpersuasive. Ex Parte No. MC-96 (Sub-No. 2) establishes the minimum information that must be submitted to the ICC for the purposes of a fitness determination. The rules do not, as the NTBA contends, eliminate the necessity for making a fitness determination. To the contrary, the new rules state that, "If no opposition is received, and Commission examination does not reveal fitness objections, applicant will be granted appropriate authority." (Emphasis added). Quite clearly, the ICC is to issue licenses pursuant to the new rules after an examination of the applicants' fitness. Section 10924 does not specify factual determinations that the ICC must make in evaluating applicant fitness. Consequently, the ICC has the discretion to decide what facts it will routinely consider in making fitness determinations. We find no abuse of discretion in the present case and no merit to the contention that Ex Parte No. MC-96 (Sub-No. 2) abrogates the ICC's responsibility to make fitness determinations under § 10924.
 
 II.
 
 16
 The NTBA contends that in changing the tour broker licensing procedures the ICC acted without adequate consideration of all relevant factors necessary to make its decision a rational one. The NTBA argues that the ICC's action was therefore arbitrary and capricious in that the administrative record is devoid of evidence supporting the decision to alter existing procedures.
 
 
 17
 This Court's review of the Commission's informal rulemaking under the arbitrary and capricious standard of 5 U.S.C. § 706(2)(A) is directed to a determination whether a "rational basis" for the agency's decision may be found in the facts of record. Almay, Inc. v. Califano, 569 F.2d 674, 681 (D.C.Cir.1977). The Court will not substitute its findings for those of the ICC, but rather will examine the record to determine whether there are facts capable of sustaining the agency's findings.
 
 
 18
 In the present case the ICC based its decision to review and subsequently to alter existing tour broker licensing procedures on findings that, (1) the existing examination of public need for issuance of tour broker licenses does not perform a valuable function, and (2) that under the existing system strong institutional impediments to obtaining tour broker licenses improperly deter entrepreneurs. Certainly these findings provide a rational basis for the Commission's decision to alter the existing licensing requirements. However, these findings must themselves be factually supported in the administrative record in order to assure that the ICC's decision to alter existing licensing requirements was the rational result of reasoned analysis.
 
 
 19
 The NTBA contends that the Commission's failure to actually study the operations of the tour broker industry renders the Commission's findings regarding the adequacy of existing licensing procedures and the desirability of the new procedures of Ex Parte No. MC-96 (Sub-No. 2) speculative and therefore arbitrary and capricious. The NTBA asserts that had the Commission actually undertaken to study the tour broker industry, then it would have learned that existing licensing requirements were serving important functions in protecting both the consumer of tour broker services and the tour broker industry.
 
 
 20
 Our examination of the record confirms the NTBA's contention that the ICC presented no systematic study of the tour broker industry. However, the ICC's decision to promulgate new tour broker licensing rules is not an unreasoned decision. Rather, the ICC's decision was based on the Commission's long experience administering the existing licensing rules and its consequential dissatisfaction with those procedures. The Commission's decision fully explained its perception that existing rules requiring individual examinations of the public interest are without substantial value and of minor importance in achieving the goals of § 10924 while contributing unnecessary expense and time to the licensing process.
 
 
 21
 While the practice is not without problems, an agency may rely on its "experience" to provide the necessary factual support for its decision to engage in informal rulemaking so long as that experience is made part of the record and susceptible to judicial review. National Nutritional Foods Ass'n v. Weinberger, 512 F.2d 688, 701 at n. 11 (2nd Cir.), cert. denied sub nom., National Nutritional Foods Ass'n v. Matthews, 423 U.S. 827, 96 S.Ct. 44, 46 L.Ed.2d 445 (1975); Consumers Union of the United States v. Consumer Product Safety Commission, 491 F.2d 810, 812 (2nd Cir. 1974). A problem for the agency in relying on its experience as factual support for its decision to promulgate a rule is the necessity of adequately recording and explaining that experience on the record. In the present case, the ICC's explanation of its experience provides sufficient support under the arbitrary and capricious standard to sustain the rule change as a rational decision. In light of the Commission's responsibility to promulgate rules implementing § 10924, we conclude that the ICC's perceptions based on its experience with existing rules were adequate to support the Commission's decision to alter its rules. Therefore, we are of the opinion that the ICC's decision to promulgate new tour broker licensing rules was supported by its findings that existing rules were failing to implement § 10924.
 
 III.
 
 22
 We have considered the briefs and arguments relating to the NTBA's contentions that the ICC promulgated Ex Parte No. MC-96 (Sub-No. 2) in violation of the procedural requirements of the National Environmental Policy Act and the Energy Policy and Conservation Act. We conclude that these contentions are without merit.
 
 
 23
 For the reasons stated above the decision of the Interstate Commerce Commission is AFFIRMED.
 
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. § 294(d)
 
 
 [1]
 This Court stayed the decision and adopted rules that are the subject of this review by Order dated February 19, 1980
 
 
 [2]
 The NTBA's efforts to distinguish these cases are unpersuasive. In both cases the ICC's general finding of public interest or public necessity were found sufficient to comply with statutory provisions that the Commission act only in the public interest